# Austin et al. v. Bean, Executor, et al.

*Bill in Equity to Foreclose a Mortgage.*

1. *Partition of lands; no equities involved.*—In a proceeding for the partition of lands, as provided by our statutory system, (Code, §§ 3237-3262), the consideration and adjustment of equities between the joint owners is not involved; and a decree of the probate court granting partition settles, in no wise, any of the equities subsisting in favor of the several owners upon, or in respect of, the common property. ·

2. *Same; co-tenant not estopped thereby from asserting equities against existing mortgage.*—When there exists a mortgage on joint property to secure a debt of one of the co-tenants, a partition of the common property by decree of the probate court does not estop the other co-tenants from asserting their equity to have the share allotted to their joint owner sold first to pay such debt, in exoneration of the shares allotted to them.

3. *Same; co-tenant not estopped from asserting equity by exchange of her share by warranty deed.*—The fact that one of the joint owners of common property, immediately after the partition of said lands by decree of the probate court, conveyed the share allotted to her by warranty deed, in exchange for the share of one of her co-tenants, does not estop her from the assertion of her equity to have the share so exchanged sold first, to satisfy a mortgage existing upon the whole property, given to secure a debt of her said co-tenant, the mortgage having been executed prior to the acquisition of title by the co-tenants.

4. *Purchaser from an heir; charged with notice of equity in favor of other heirs.*—The purchaser of land from one who derives title by descent from his father, is charged with notice of any equity existing in favor of the ancestor, or the co-heirs of the grantor, affecting the land in its descent.

5. *Mortgage by joint owner after partition does not destroy equity in favor of his co-tenants.*—When, after the partition of lands, the title to which was acquired by descent, one of the heirs mortgages the share allotted to him, his mortgagees are charged with notice of equities existing in favor of the other heirs, to have the mortgagor's share applied first, in exoneration of the shares of his co-heirs, to the satisfaction of a prior mortgage executed by their ancestor on the common property for the benefit of such heir and mortgagor.

6. *Testimony as to statement made by deceased; competency of witnesses interested in the suit.*—The exception as to competency of witnesses, provided by statute (Acts 1890-91, p. 557), being for the protection of the estate of the deceased and those claiming under him, when

the estate of the deceased person is interested in the result of a proceeding, the adversary of said estate can not object to the competency of witnesses called by the representatives of the deceased in such proceedings, to prove transactions with or statements by the deceased, on the ground that the witnesses are heirs of the deceased and directly interested in the result of the suit.

7. *Parties to a suit; a non compos mentis a ward of the court.*—When a *non compos mentis* is a party to a suit, he will be treated as the ward of the court, so far as is necessary for the court to see that his rights are properly asserted and protected ; and for this purpose a guardian *ad litem*, appointed to represent his interest, is under the direct control of the court.

APPEAL from the City Court of Decatur.

Heard before the Hon. W. H. SIMPSON.

The original bill in this case was filed on February 12, 1891, to foreclose a mortgage, executed by V. L. Austin and wife, Elizabeth Austin, to John D. Rather on February 12, 1884, and which mortgage was transferred by said Rather to B. F. Bean on March 26, 1885. The said transferee, B. F. Bean, died, and the executor of his last will and testament, L. G. Bean, is the complainant in the present suit. The said V. L. Austin and Elizabeth Austin died before the present bill was filed, and left surviving them as heirs-at-law William H. Austin, Mollie Roper, *nee* Austin, and Taylor Austin, a *non compos mentis*.

The facts in the case are sufficiently stated in the opinion. There were objections by the Armitage-Herschell Co. to that portion of the testimony of William H. Austin, Charles Austin and Mrs. Roper to the effect that the money borrowed from Rather, to secure the payment of which the mortgage was executed, was for the use and benefit of Willam H. Austin. The grounds of these objections were,that it was shown, on cross-examination, that the witnesses' source of knowledge was from hearsay, and because such testimony was in reference to a transaction with or statement by a deceased person, whose estate is the subject matter of the suit, and the witnesses are parties thereto and interested therein. These objections were sustained in the final decree of the chancellor.

On the final submission of the cause, upon the pleadings and proof, the chancellor decreed that the complainant in the original bill was entitled to the relief prayed

for, and that the Armitage-Herschell Company, under the prayer for general relief in its cross-bill, was entitled to have all the lands described in the mortgage of Bean to Rather "sold for the satisfaction of the mortgage of the complainant, L. G. Bean, executor, and to have the sale of each share made separately, and to have each share contribute equally to the payment of the price and paramount charges on the land, towit, the Bean mortgage and the costs of the suit; and further, to have the remainder of the said three shares paid over to the parties entitled, to-wit, Mollie Roper, Taylor Austin and said Armitage-Herschell Company."

The chancellor also declared that if any latent equity existed in favor of Mollie Roper, Taylor Austin and Charles Austin, at the death of their father, as set up in the cross-bill filed by them, it was "cut off by the partition proceedings in the probate court to which they were parties, and by the conveyance of Mollie Roper to William H. Austin, all of which made them warrantors of each other," and, therefore, decreed that the cross-bill filed by them be dismissed.

This appeal is prosecuted by Mollie Roper, Taylor Austin and Charles Austin, who assign as error the final decree of the chancellor granting the complainant the relief prayed for in the original bill, dismissing appellant's cross-bill, and in not ordering the lands of William H. Austin sold for the payment of the mortgage before subjecting the lands of appellants to sale, and also in holding that William H. Austin, Mollie Roper and Taylor Austin were not competent to testify as to the purposes for which the mortgage from Virgil Austin to Rather was made.

BRICKELL, SEMPLE & GUNTER, for appellants.—(1.) W. H. Austin, Charles Austin and Mollie Roper were competent witnesses to testify as to the making of the mortgage by Virgil Austin to secure a debt for W. H. Austin.—Code, § 2765, Acts 1890–91, p. 557; *Kumpe v. Coons*, 63 Ala. 448. (2.) Mollie Roper and Taylor Austin had the right to require W. H. Austin's share of the land to be applied first to the payment of the mortgage debt of Rather. (3.) Subrogation and marshalling are founded on the same principles; the latter being resorted to prior to sales, the former after sales, to effect the same

result, viz., the proper application of property to the discharge of debts so as to work out equitable results as between persons having claims against different parcels of property or standing in a different relation to the same debt.—*Cheeseborough v. Millard*, 7 Am. Dec. 494; *Aldrich v. Cooper*, 2 Lead. Cases in Eq. (Title "Marshalling,") pp. 262–318. (4.) Wherever, as between two parties who personally are bound, or whose property is bound for debt, the liability of one is primary and the other secondary, the right of subrogation and marshalling exists.—*Redington v. Cornwall*, 90 Cal. 49; *Aldrich v. Cooper*, 2 Lead. Cases in Eq., (Title "Marshalling and Subrogation"), p. 292; *Wilkes v. Harper*, 2 Barb. Ch. Rep. 338; Harris on Subrogation, 181, 184. (5.) The right to marshal securities as to the debtor is absolute, if no injustice is done, and so it is as to the creditor. It is clear that no damage can be done to the creditor, for all the land is to be sold for his debt, there is no diminution of his security, but only the order of sale is directed. And as to the debtor, W. H. Austin, he can not complain, since all that is asked is that his own property shall be applied to pay his debt to the relief of his surety's property.—*Twombly v. Cassidy*, 82 N. Y. 155; *Cole v. Malcolm*, 66 N. Y. 363; *Dickson v. Chorn*, 71 Am. Dec. 382; 14 Amer. & Eng. Encyc., 702–3–4; *Cherry v. Monro*, 2 Barb. Ch. (N. Y.) 618. (6.) The right to require the property primarily liable for a debt to be applied for the relief of property not so liable, applies to persons taking by descent or devise as well as by purchase.—2 Lead. Cases in Eq., 242, 292; Harris on Subrogation, 97; *Rodman v. Burroughs*, 63 N. C. 242. (7.) And property mortgaged stands as a surety, if a person agreeing to pay under such circumstances would be a surety. And a person entitled to the property, though not liable for the debt, has the rights of a surety with respect to the debt. *Lidderdale v. Robinson*, 2 Brock. 159; 77 Amer. Dec. 490; *Bull v. Coe*, 11 Am. State Rep. 240–242; *Dering v. Earl of W.*, 1 Lead. Cases in Eq. 149–150; *Reddington v. Cornwall*, 90 Cal. 49; *Price v. Reed*, 15 N. E. Rep. 754; *Cherry v. Monro*, 2 Barb. Ch. (N. Y.) 618; *Twombly v. Cassidy*, 82 N. Y. 155; *Cole v. Malcolm*, 66 N. Y. 363. (8.) The equities of Taylor Austin and Mollie Roper were not involved and could not be adjusted in a partition proceeding in the probate court. The partition did

not affect the mortgage of Rather, except to make it, as between the several owners of the land which had been divided, to rest in equity, primarily on the principal debtor, W. H. Austin, as before it rested on his undivided interest. The object and effect of partition is only to sever the joint possession, transferring to each owner's share the equities resting on it before division.—5 Wait's Act. & Def. 87; *Westervelt v. Haff*, 2 Sandf. Ch. (N. Y.) 98; *Re Howe*, 1 Paige 125; Freeman on Co-ten. & Par., §§415, 478; *Barington v. Clarke*, 21 Am. Dec. 432; *Staples v. Bradley*, 60 Amer. Dec. 630. (9.) The mortgage executed by W. H. Austin on his own share after the partition and conveyance to him by Mollie Roper gave to his mortgagee no right superior to that possessed by W. H. Austin. The mortgage recited that there was a prior mortgage on his land to secure a debt owing by his ancestor and himself; and the possession of the owners of the other lands included in the Rather mortgage was notice to W. H. Austin's mortgagee of their equity to hold the same against any right of W. H. Austin, or person claiming under him, to sell their land for any purpose, and of the right of the possessors to equities against the world.—*Ellis v. Tousley*, 1 Paige 280; *Clidewell v. Spaugh*, 26 Ind. 323; *Moore v. Pierson*, 71 Amer. Dec. 409 and note; *Bryan v. Raimivez*, 68 Am. Dec. 340 and note; *Wyatt v. Elam*, 68 Amer. Dec. 518. (10.) The mortgagee of W. H. Austin did not obtain a legal title to the land owned by him. The legal title was in Rather, the first mortgagee. There can be no such thing as a *bona fide* purchaser without the legal title.—*Chiles v. Boon*, 10 Pet. 177; *Wilson v. Holt*, 83 Ala. 528, 3 So. Rep. 321; 2 Story's Eq., 1502; *Cole v. Malcolm*, 66 N. Y. 363; 2 Jones on Mortgages, §1202; Robeson's Appeal, 117 Pa. St. 628; 14 Amer. & Eng. Enyc. of Law, 686; *Woollen v. Hillen*, 52 Amer. Dec. 693; 2 Story's Eq., 1373; 14 Amer. & Eng. Encyc. of Law, 702–4; *Twombly v. Cassidy*, 82 N. Y. 155.

## ON APPLICATION FOR REHEARING.

(1.) The execution of the warranty deeds by Mrs. Roper and W. H. Austin in exchange of the shares allotted to them, respectively, did not destroy the equity existing in Mrs Roper, to have the share conveyed to W.

H. Austin sold first, in payment of the mortgage debt
made for W. H. Austin's benefit.—*Sewell v. Henry*, 9
Ala. 24; *Gaffney v. Hicks*, 124 Mass. 303; *White v. Bro-
caw*, 14 Ohio St. 339; 2 Devlin on Deeds, §845; *Leach v.
Leach*, 58 Amer. Dec. 645. (2.) The exchange ope-
rated merely as partition does as to personal obligations
resting upon either of the parties remaining, and, as to
the land, would be transferred to the part acquired
by the party owing the debt or resting under the obliga-
tion.—Rawle on Covenants for Title, 406 and note; *Rec-
tor v. Waugh*, 17 Mo. 13; *Dawson v. Lawrence*, 42 Amer.
Dec. 210; *Harrison v. Ray*, 108 N. C. 215, 23 Am. St. Rep.
57. (3.) The covenant of Mrs. Roper in her warranty
deed to W. H. Austin can not be considered to embrace
an incumbrance which the said Austin had agreed to dis-
charge, and which could not have been asserted against
the land had it continued to be hers, and which becomes
a charge on the land conveyed by her alone by the de-
fault of W. H. Austin.—*Fitch v. Baldwin*, 17 John. 165;
*Watts v. Welman*, 2 N. H. 460; *Furness v. Williams*, 11
Ill. 240; *Silverman v. Loomis*, 104 Ill. 137; *Smith v.
Camell*, 32 Me. 123; *Brown v. Stapels*, 28 Me. 497.

E. W. GODBEY, *contra.*— (1.) The partition proceed-
ings concluded every right any of the parties thereto had
in and to the lands partitioned.—Freeman on Co-tenancy
& Partition, 531; *Reese v. Holmes*, 5 Rich. Eq. 540; *Herr
v. Herr*, 5 Pa. St. 428; *Burghardt v. Van Dusen*, 4 Allen
374; *Foxcroft v. Barnes*, 29 Me. 128; *Kain v. Rock River
Coal Co.*, 15 Wis. 129. (2.) Those proceedings vested
the title in fee simple in each of the Austin heirs, as
fully and completely as if each had conveyed to the oth-
ers.—Code, §3246. Fee simple is a pure inheritance
free from conditions, and is absolute so far as it is pos-
sible for one to possess an absolute right of property in
lands.—4 Kent's Commentaries 5; Tiedeman on Real
Property, 23. (3.) The conveyance by Mollie Roper
and husband, with full covenants of warranty, to W.
H. Austin, prior to the mortgage to Armitage-Herschell
Co. of the lands conveyed by that mortgage, executed by
W. H. Austin, cut off and extinguished all her right and
title, legal and equitable, in and to, said lands and for-
ever estopped her.—*Barclift v. Lillie*, 82 Ala. 319; 2 So.
Rep. 120; *Hargrave v Melbourne*, 86 Ala. 270, 5 So. Rep.

285 ; *Chapman v. Abraham*, 61 Ala. 108. (4.) Mollie Roper and Chas. H. Austin, being joined in the cross bill with Taylor Austin, and the two former showing no right whatever to the relief prayed in said cross bill, the same was properly dismissed, irrespective of whether the said Taylor had intrinsically any right to relief or not. All must recover, or none can.—*Hubbard v. Allen*, 59 Ala. 283, 301. (5.) The equity sought to be set up by the Austin heirs against the land mortgaged by W. H. Austin to Armitage–Herschell Co. required a cross bill and could not be asserted by answer.—*Bedell v. New Eng. Mortg. Sec. Co.*, 91 Ala. 328, 8 So. Rep. 494; *Weaver v. Brown*, 87 Ala. 537, 6 So. Rep. 354; *Whitfield v. Riddle*, 78 Ala. 99. (6.) Owen and Morgeson, as mortgagees of W. H. Austin, were *bona fide* purchasers without notice.—*Mobile Life Ins. Co v. Randall*, 71 Ala. 220 ; *Whelan v. McCrary*, 64 Ala. 329 ; *Coleman v. Smith*, 55 Ala. 376 ; *Rogers v. Adams*, 66 Ala. 602 ; *Craft v. Russell*, 67 Ala. 9. (7.) As transferee of that mortgage Armitage–Herschell Co. is entitled to the same protection against latent equities as Owen and Morgeson.—*Calahan v. Monroe, Smaltz & Co.*, 56 Ala. 303 ; *Horton v. Smith*, 8 Ala. 73 ; 2 Brick. Dig., 520, § 192. (8.) Armitage–Herschell Co., as *bona fide* purchasers of the negotiable notes executed by W. H. Austin to Owen and Morgeson, are entitled to protection against latent equities supposed to affect the mortgage security for the notes.—*Spencer v. M. & M. R. Co.*, 79 Ala. 586 ; *Hawley v. Bibb*, 69 Ala. 52 ; *Wildsmith v. Tracy*, 80 Ala. 258.

HEAD, J.—Wm. H. Austin, Taylor Austin and Mollie Roper, *nee* Austin, acquired by descent from their father, Virgil Austin, deceased, 396 acres of land, described in the bill. This land, at the death of Virgil, was encumbered by a mortgage which he had executed thereon to John D. Rather for $1,262, which debt and mortgage, by assignment, became the property of B. F. Bean. The note which the mortgage was given to secure was executed by said Virgil and his son, the said Wm. H. Austin, so far as the note itself discloses, as principal debtors. Virgil Austin died in 1885. On the 3d day of October, 1887, Wm. H. Austin instituted proceedings in the probate court of Morgan county, wherein the lands lay, against his said brother and sister, Taylor Austin

[Austin et al. v. Bean, Executor, et al.]

and Mollie Roper, for partition of the lands between himself and them under the provisions of the Code, Article 1, Chap. 17, Title 2, Part 3. The proceedings were had and conducted, in every respect, conformably to the statute, and resulted in partition, under proper decree, on the 12th day of December, 1887, the share of each being allotted and set off to him or her in severalty, of which due record appears. Immediately after this allotment, the said Wm. H. and Mollie exchanged shares, each conveying to the other, by separate deeds, with general covenants of warranty, the land which had been allotted to him or her, respectively, the husband of Mollie joining with her in her conveyance.

On the 24th day of June, 1890, the said Wm. H. Austin and wife, to secure an indebtedness of $2,000, presently contracted, executed to Owen & Morgerson a mortgage on the lands acquired by him by exchange with his sister; which debt and mortgage were subsequently assigned for value to Armitage-Herschell Co. In March, 1889, said Mollie Roper sold to Chas. H. Austin three acres of land she had acquired by the exchange, and he went into possession of, and improved, the same.

In this status of the land, the complainant, L. G. Bean, as executor of B. F. Bean, deceased, filed this bill to foreclose the said Rather mortgage, bringing all the said interested parties before the court as defendants. Mollie Roper and husband, and Wm. H. Austin and Chas. H. Austin answered, separately, setting up that the mortgage sought to be foreclosed was executed by Virgil Austin to secure the payment of money borrowed from Rather for the exclusive use and benefit of said Wm. H. Austin, who received and used the same for his own purposes, the said Virgil becoming by the execution of the note and mortgage, in fact, merely the surety of Wm. H., who was, in fact, the principal debtor; and insisting that the land acquired by him by virtue of the allotment and exchange, aforesaid, be first sold in ease or exoneration of the portions of the land acquired by the said Mollie and Taylor Austin. Taylor Austin, being *non compos mentis*, defended by guardian *ad litem*, who, by answer, denied all the allegations of the bill. Mollie Roper, Taylor Austin, by next friend, and Chas. H. Austin, also, jointly, filed a cross-bill to marshal the assets, praying the prior sale of Wm. H. Austin's share

[Austin et al. v. Bean, Executor, et al.]

of the land in exoneration of the rest. This was answered by the Armitage-Herschell Co., setting up the said partition proceedings and exchange, the execution and their acquisition of the Owen & Morgerson mortgage, denying the alleged suretyship of Virgil Austin, and insisting that they were *bona fide* purchasers, without notice of the alleged equity. They also answered the original bill; and, making their answer a cross-bill, set up the same facts, as those set up in their answer just mentioned, and prayed that the lands of Mollie Roper and Taylor Austin be first sold, in exoneration of the lands of said Wm. H., upon which they hold their mortgage. This relief, however, was denied by the chancellor, and is not insisted on, and may not be further noticed.

The controversy then is between Mollie Roper, Taylor Austin and Chas. H. Austin on the one side, and Wm. H. Austin, Owen & Morgerson and the Armitage-Herschell Co. on the other, and turns upon the equity of the cross-bill filed by the former. It appears, however, that Wm. H. Austin is friendly to the purpose of the cross bill. The sufficiency of this cross-bill was tested by demurrer interposed by the Armitage-Herschell Co., the important grounds of which are, that any equity the complainants therein may have had to marshal the assets as prayed, is cut off and barred, first by the said proceedings in partition, and secondly, by the conveyance in fee with warranty of Mollie Roper and husband to Wm. H. Austin, their mortgagor.

It is most manifest our statutory system of partition of lands between joint owners or tenants in common makes no provision for adjusting equities which may subsist in favor of the owners upon, or in respect of, the joint or common property. It is a system whose whole purpose and scope are to effect, by easy and expeditious methods, the division of the property into as many equal shares, in value, as there are owners, and the allotment of one share to each; and to convert the previously existing unity of title and possession into titles and possessions in severalty. In order to the exercise of the jurisdiction, the interest of each owner must be the same, and the partition must be made by lot. There is no intention in the statute, or jurisdiction conferred upon the probate court, to settle conflicting claims of title, whether

legal or equitable; on the contrary it is expressly pro-
vided that no division or partition can be made under
the statute, when an adverse claim or title is asserted by
any one, or brought to the knowledge of the commis-
sioners, or of the judge of probate.—Code, § 3251.   The
further express provision is made, that, "When there is
a lien on an individual interest of any of the parties,
such lien, if a partition is made, is thenceforth a charge
only on the share assigned to such party."—Code,
§ 3247.  Beyond this, partition, under the statute, affects
no lien or equity, whether existing in favor of a co-owner
or third persons.   Section 3246 provides, that "the par-
tition so made vests a title in fee-simple in the person
to whom the several shares are allotted, as fully and
completely' as if each had conveyed to the others ; but if
any fraud or undue influence be employed by any of the
parties, to obtain an unfair partition or allotment, such
partition may be annulled by the chancery court on bill
filed within five years after the allotment."   It is con-
tended that this provision visits upon the partitioners
the same effect which would attach to a grantor of lands
by his voluntary execution of a deed of bargain and sale
to a grantee ; and that as such a deed would estop the
grantor from asserting any equity upon the land then
existing, or which might grow out of conditions then
existing, so the statute estops the partitioner from a like
assertion.   The argument is, that though the probate
court confessedly can not take cognizance of, and settle
such rights, by its decree of partition, yet a party to the
proceeding, invested with such rights against his co-
owner, may, by resort to equity, arrest the probate court
in the exercise of its jurisdiction, have all parties in
interest brought before the court of equity and partition
made upon the basis of a settlement of all rights, legal
and equitable, of all the parties.   We do not think it is
so contemplated by the statute.  Limited as the jurisdic-
tion of the probate court is in the matter of partition,
and considering together the several provisions of the
whole chapter upon the subject, it is clear there was no
intention to enlarge the estates or interests of the several
owners, when reduced to a severance of the ownership
and possession, by attaching thereto such an implied
warranty on the part of each owner in favor of the oth-
ers as will cut off equities in favor of and against each

other which were not and could not be drawn in question or adjudicated in that forum. The purpose of the provision relied on is to declare the same ownership in fee, in severalty, which had previously existed in unity, as concluded by the decree of the court granting partition. It is not now our purpose to inquire or decide what effect is produced by the decree of partition, by way of estoppel, upon a party to the proceeding to afterwards assert against another party a right or title of the character actually or necessarily involved in the proceeding. Ownership and actual or constructive possession of all the partitioners being essential to the jurisdiction of the probate court, it may be that partition implies, on the part of each to the other, warranty of the ownership alleged, or necessary to exist, in order to an exercise of the jurisdiction. Nor do we declare its effect upon equities where the partition is had in a forum capable of settling equities. All we decide is that adjustment of equities is not essential to that partition which the probate court is authorized to decree, and that it is the spirit of the statute that their settlement be left to other tribunals, without arresting the jurisdiction of the probate court. We do not decide that the latter course may not be pursued. Cases may arise where it is desirable to settle all matters in one proceeding, and chancery may have authority to restrain proceedings in the probate court to that end. These are questions not necessary for decision here.

It is next insisted that the warranty deed executed by Mollie Roper and her husband to Wm. H. Austin operates to estop the assertion by her of the equity she now claims, and that as she is joined in the cross-bill with Taylor Austin, who rests under no such estoppel, no relief can be granted to either.

We take the facts in reference to the execution of that deed, as they are stated, and correctly stated, in the answer and cross-bill of the Armitage Herschell Co., to the original bill, as follows, after correctly stating the probate partition proceedings : ''This defendant further avers that almost immediately after the subdivision, partition and allotment hereinbefore referred to, the said Mollie Roper and the said Wm. H Austin exchanged, each with the other, the lots and parcels of land allotted and set apart to them, respectively ; the said Wm. H.

conveying to said Mollie the parcels of land that had
been allotted to him, and the said Mollie Roper, and her
said husband, by fee-simple deed of general warranty of
date Dec. 13, 1887, (which was recorded Feby. 3, 1888),
conveying to the said Wm. H. Austin that portion of
said lands which had been allotted to the said Mollie
Roper, as aforesaid; and from December 13th, 1887,
until now, the several parties to said partition proceed-
ings have each been in the sole and exclusive occupancy
and possession of the said several lots or parcels of land,
that is to say; the said Taylor Austin has been in the
sale occupancy and possession of the part and parcel of
said land set apart and allotted to him by the said com-
missioners in said partition proceedings; and the said
Mollie Roper and her husband, A. J. Roper, have been
in the sole and exclusive occupancy and possession of
the parts and parcels of land conveyed to the said Mollie,
on December 13th, 1887, by said Wm. H. Austin; and
the said Wm. H. Austin and his wife, Sue Austin, have
been and are now in the sole and exclusive occupancy
and possession of the parts and parcels of said land con-
veyed to the said Wm. H. Austin by said Mollie Roper
and her husband." The partition was consummated by
the commissioners, on Dec. 12th, 1887. The deed, in
exchange, executed by Wm. H. Austin to Mollie Roper,
contains the like covenants of warranty as those in the
deed of the latter and her husband to the former. The
writer was disposed to think we should seek to ascertain
and give effect to the intention of the parties deducible
from these facts, and that in accordance with that inten-
tion the estoppel claimed can not be invoked. It is
manifest the exchange by deeds was based upon the par-
tition just then completed by the commissioners. We
have seen that the division to be made by the commis-
sioners was one of exact equality, in value, of all the
shares, without the consideration or adjustment of any
equities in favor of one co-owner against another. The
value of the absolute and unincumbered ownership of
the share allotted to Mrs. Roper was the exact equiva-
lent of the value of the same ownership of the share
allotted to Wm. H. The exchange was of one share for
the other. It would seem, therefore, that as matter of
fact, the exchange was not intended to involve the settle-
ment of any rights or equities which the partition by

the commissioners did not, itself, involve. All the shares were incumbered by the Bean mortgage. Mrs. Roper, in form, warranted the title to the share of Wm. H. against that mortgage and all other incumbrances; but, in turn, Wm. H. likewise, simultaneously, warranted the title to the share of Mrs. Roper. What then was the intention of the parties? The writer was inclined to think their only purpose was to release each to the other the same interest and estate held by them in their respective shares at the completion of the allotment and no other; that the covenants, in so far as the equities of the parties not involved in the adjudication in partition are concerned, set-off and annulled each other. To enforce the letter of the covenants would require, that if Wm. H. were evicted and his estate destroyed by the Bean mortgage, Mrs. Roper should answer therefor; if Mrs. Roper were evicted and her estate destroyed by the same mortgage, Wm. H. should answer therefor; and if both suffered a like fate, each should answer to the other—a virtual set-off of demands.

In *Dawson v. Lawrence*, 13 Ohio 543, (42 Am. Dec. 210), two co-tenants, Smith and Houston, effected partition by mutual deeds of bargain, sale and release, each purporting to be for a consideration in money. Subsequently, it was ascertained that the title of Houston was worthless. In the meantime, both Smith and Houston had conveyed their interests acquired by virtue of the partition. This partition having been declared void because one of the parties to it had no title, a question arose in regard to the relative claims and rights of the grantees of Houston and the grantees of Smith. The grantees of Houston insisted that the deeds referred to did not operate as a "simple extinguishment of interest, like a deed of partition, or a mere release, but a positive, affirmative conveyance, by which Smith sold a part of his land to Houston, and Houston sold a part of his land to Smith; so that each purchaser from Houston may trace a part of his title to Smith, and each purchaser from Smith can trace a part of his title to Houston; and, consequently, the condition of each purchaser, deriving his title from the same source, is equally meritorious." But to this argument the Supreme Court replied as follows: "We can not admit this to be the true nature of the transaction. The parties did not in-
10

[Austin et al. v. Bean, Executor, et al.]

tend to acquire new rights, but to regulate the manner in which subsisting rights were to be enjoyed. Smith did not contemplate acquiring any title from Houston, nor to communicate any of his own, nor to share with Houston, nor with Houston's grantees, the benefit of warranties from his own grantors. But a simple partition by release was all the parties meant, as specified in the recital, and no one is liable to be misled by the nominal money consideration, or by the use of the words 'bargain and sale' in this connection. The parties to these deeds lost nothing and acquired nothing, except defined boundaries to the land which they had previously held in common. The purchasers from Houston, therefore, are not authorized to rely upon this act as any thing except a partition—defining boundaries, but conferring no title. They derive from Houston alone; and must be content with rights subordinate to such equities as the purchasers from Smith may exact.—Freeman on Co-ten. & Part., § 409.''

But upon full consideration, we hold that the deed of Mrs. Roper to Wm. H. Austin must be construed according to its legal effect apparent upon its face; and, so holding, that its effect is to estop her from asserting any equity then existing in her favor in or upon the lands therein conveyed. As to her, therefore, there is no equity in the cross-bill in which she is complainant. But as to Taylor Austin there is no such estoppel. We will speak further on of his rights in the premises.

Owen & Morgerson and their assignee, Armitage-Herschell Co., are not entitled to protection against the asserted equity upon the ground that they are bona fide purchasers without notice. All the title their mortgagor, Wm. H. Austin, had was derived by descent from his father; and a purchaser from him is charged with notice of any equity in favor of the ancestor or heirs affecting the land in its descent. To illustrate: Suppose advancements had been made by the ancestor to Wm. H. Austin, of which these parties had no notice, it would not be contended, in such case, that a sale by him of his interest in the inheritance, to one for value, without notice of the advancements, would affect the right of the other heirs to have an account of such advancements in diminution or extinguishment of his interest in the inheritance. So, also, if he were indebted to the ancestor his

interest in the land would descend to him charged with such indebtedness; which charge would prevail against any purchaser from him, with or without notice. The principle is the same here. If the equity asserted were one existing against the ancestor in favor of a third person; or if created by Wm. H. Austin after the descent of the land to him, a different question would be presented. In such case, Owen & Morgerson and their assignee, purchasing for value without notice, would be protected. But as it is, knowing, or being bound to know, their mortgagor's title to have been acquired by descent, they were bound to inquire and learn his relations to the land, in respect of charges in behalf of the estate of the ancestor or other heirs. It matters not how obscure the equity was, the lands descended affected by the infirmity it created, as against all the world.

It is very clear that Wm. H. Austin, Chas. Austin and Mrs. Roper were competent witnesses to prove that the money borrowed of Rather, was for the use and accommodation of Wm. H. Austin, and the offers and promises of Wm. H. to repay it. If the estate of Virgil Austin is "interested in the result of the suit," within the meaning of the statute, Session Acts 1890–91, p. 557, these witnesses are called to testify by the only representatives of that estate in the present controversy. As we have seen, the sole controversy is between the complainants in the cross-bill, who are representing the ancestor in the effort to enforce the asserted equity, on the one side, and Wm. H. Austin and the Armitage-Herschell Co., and Owen & Morgerson, his mortgagees, on the other. The exception as to competency mentioned in the statute is for the protection of the estate of the deceased and those claiming under him, and does not contemplate that the adversary of the estate, in a suit or proceeding, may object to the competency of witnesses called by the representatives of the deceased in such suit or proceeding to prove transactions with or statements made by him.

We have said that Mrs. Roper estopped herself by her deed from asserting the equity she now claims, but that Taylor Austin is not estopped. They both joined as complainants in the cross-bill, hence no relief could be granted, under that bill, to either. But, Taylor Austin is *non compos mentis*, and will be treated as a ward of the

court. It is the duty of the court to see that his rights are properly asserted and protected. For that purpose the guardian *ad litem* is under the control of the court. The city court should not have dismissed the ward without seeing that his rights were properly asserted. It should have directed the guardian *ad litem* to file a separate cross-bill in behalf of the ward, so that the assertion of his rights would not be clogged with infirmities which attached to the claims and demands of others. We will reverse the decree, and here direct the guardian *ad litem* to file such a cross-bill, unless by the consent of Mrs. Roper and Chas. H. Austin, that already on file be amended by striking them out as parties complainant, in which event relief may be granted Taylor Austin upon that bill.

The decree of the city court is reversed, with directions to the guardian *ad litem* as above stated, and the cause remanded for further proceedings. The city court can so mould its final decree when rendered, that the equity to marshal the assets be enforced in behalf of Taylor Austin, without granting any such relief to Mrs. Roper or Chas. H. Austin.

Reversed and remanded.

ON REHEARING.    Announced Aug. 9, 1894.

HEAD, J.—Upon consideration of the exhaustive argument of counsel in support of the application for a rehearing in this cause, we feel constrained to recede from the conclusion announced in our former opinion as to the effect of Mrs. Roper's deed to Wm. H. Austin, as an estoppel upon her to assert the equity she seeks to enforce, and to adopt the first impressions of the writer of that opinion, as therein expressed. The reasoning and authorities set forth in the printed argument for a rehearing are conclusive to our minds. The former decree will be set aside, and a decree here rendered reversing the decree of the city court and remanding the cause, with directions to the city court to grant the complainant in the original bill and the complainants in the cross-bill of Mrs. Roper and others, the appropriate relief therein prayed.

Reversed and remanded.

BRICKELL, C. J. not sitting.