# McCalley v. Finney.

### Bill for Partition.

(Decided June 30, 1916. Rehearing denied December 30, 1916. 73 South. 639.)

1. **Judgments; Final; Interlocutory.**—A decree may be partly final and partly interlocutory; final insofar as it determines all issues of law and fact constituting the equities of the cause, and interlocutory as to ulterior proceedings regulating its mode of execution.

2. **Partition; Sale.**—Where the encumbrances were executed pending the litigation resulting in an order for partition, and the knowledge of such encumbrances by one of the tenants in common resulted in lower bids than would have been submitted if the buyers had known whether the property was being sold free from encumbrances or not, the sale will be set aside on appeal although confirmed by the chancellor hearing the cause.

3. **Same; Title of Purchase; Incumbent.**—A purchaser at a partition sale takes a title free from encumbrance or leases created by one of the tenants in common.

APPEAL from Madison Law and Equity Court.

Heard before Hon. JAMES H. BALLENTINE.

Bill by D. C. Finney against George McCalley for a sale of land for partition. There was a decree for complainant confirming the sale and respondent appealed. Reversed, rendered and remanded.

BETTS & BETTS, for appellant. COOPER & COOPER, for appellee.

[McCalley v. Finney.]

GARDNER, J.—Appellee and appellant—the latter a non compos mentis—owned as tenants in common real estate consisting of 348 acres situated within 3 miles of the city of Huntsville, Ala.

A bill was filed by the appellee in the court below seeking a sale of the property for division, alleging the ownership to be a two-thirds undivided interest in the complainant and the remaining one-third in respondent, George McCalley; and that the property could not be equitably divided without a sale. The guardian of McCalley was made a party respondent. Answer was filed denying the averments of the bill. This was in the year 1909.

The cause remained upon the docket, continued from term to term as by consent, until the fall of 1915, when the testimony was taken, which supported the bill and justified a decree of sale. In the meantime appellee had been in charge of the property and duly accounting for the rent. A sale of the property was decreed upon the court's ascertaining and determining that the parties were joint owners or tenants in common as claimed, and that a sale was necessary for an equitable division. The register was accordingly ordered by the decree to offer the property for cash sale at public outcry at the Huntsville courthouse, and a reference was ordered to ascertain the question of reasonable attorney's fee. During the pendency of the suit appellee had incumbered his interest in this property with two mortgages— one in the sum of $5,000, and the other, $10,000, due in 1917. The $10,000 mortgage was placed on record only a few days before the sale, and counsel for respondent testify that they were not made aware of the existence of said mortgage previous to the date set for the sale. No mention was made of these mortgages in any of the proceedings in the cause, and of course the decree was silent in this respect.

Complainant insists that he had had an agreement with the guardian of respondent to the effect that he (complainant) should bid the sum of $15,000, that this would be satisfactory to the guardian, and that a confirmation of the sale for the sum would be by him acquiesced in. On the day of the sale and at the time the property was being called by the auctioneer, counsel for complainant conceived it to be his duty to state that the decree was entered in accordance with an agreement, and that he felt he should "direct attention to the existence of claims against the interest of complainant," and he accordingly read from a memorandum a statement touching the mortgages above referred to,

as well as certain leases of different portions of the property
made by complainant. It further appears that counsel for re-
spondent then made an announcement to the effect that any one
buying the land would buy a lawsuit. To this statement com-
plainant's counsel replied, "By no means; Mr. Finney expects
to take care of the mortgages." A prospective purchaser cried
out, "Sell free from incumbrances," to which complainant's
counsel replied, "The sale will be made according to the decree;
the court has full power to protect the purchaser." The auc-
tioneer then began to cry the sale, and one Esslinger bid $1,000,
whereupon complainant's counsel, for complainant, bid $15,000.
The auctioneer was asked how he was selling the land—whether
free from incumbrances—to which he replied, "I am going to
sell according to the advertisement; for the highest dollar."
There being no further bidding, the land was sold to complainant.
Objections to the confirmation of the sale were filed, and affi-
davits submitted, by both parties, for and against the same. The
court subsequently called some of these affiants before him for
examination in reference to what they had to say in their affi-
davits, all of which is set out in the record.

It appears from the record that Esslinger, who bid $1,000,
was bidding, according to his understanding, $16,000; that is, he
understood that a bid of $1,000 meant subject to the mortgages
of $15,000. He stated in his affidavit, and repeated in his oral
examination before the court, that he went to the sale prepared
to bid as much as $20,000, and was deterred therefrom by the
confusion which arose in regard to the mortgages and the lack
of assurance that the property was being sold free from incum-
brances. As an evidence of his good faith he tendered to the
court a certified check for $20,000, which he would bid at a resale
of the property, free from incumbrance, if sold within a reason-
able time. Another prospective bidder, a Miss McCalley, testified
that she was willing to bid as high as $19,000, and would give a
certified check as proof of her good faith. Offer was made to
secure the cost of another sale.

The witness Esslinger testified that in his opinion $24,000
is a fair valuation of the property. He attaches to the property
some speculative value for the reason that it lies near the city
of Huntsville, adjoins what is called the "Merrimac Cotton Mill
Village," and fronts a good public pike. It also appears that
two storehouses are located on the property, one renting at $25,
and the other at $10 a month. Witness Esslinger also testified

that previous to the day of the sale complainant told him that he was prepared to bid $24,000 for the land.

The chancellor (judge of the law and equity court) in his opinion, copied in the record, recognized that the remarks of counsel made at the sale must have produced confusion among prospective bidders, but he entertained the view that the court was without power to decree anything in regard to the incumbrances—the mortgages; that.as the mortgagees were not parties to the cause he was without power to sell "free from incumbrance," and that as the offer of these prospective bidders to bid was more conditioned upon the property's being sold "free from incumbrance" he concluded there was in fact no assurance that a resale would bring a higher price. The court directed attention to the fact that, as a matter of law, these mortgages on the interest of complainant were executed pending this suit, and so were executed subject to the hazard of the pending litigation (*Stein v. McGrath,* 128 Ala. 175, 30 South. 792) ; and therefore could not affect the rights of the purchaser. The court was further of the opinion that, as the decree of sale was a final decree, and, under the act creating it, the court had by lapse of time lost jurisdiction and control over said final decree, the court was without power to modify the same.

We are of the opinion that the court misconceived his authority in this respect.

"A decree may, nevertheless, be partly final, and partly interlocutory; final, so far as it determines all issues of law and fact, constituting the equities proper of the cause, and interlocutory as to ulterior proceedings regulating its mode of execution. * * * No general rule can probably be stated, which would define accurately, for all possible emergencies, what constitutes the equities of every case. These equities embrace the substantial merits of the controversy—the material issues of fact and law litigated or necessarily involved in the cause, which determine the legal rights of the parties, and the principle by which such rights are to be worked out."—*Adams v. Sayre,* 76 Ala. 517. "But a decree may be partly final, and partly interlocutory.— *Malone v. Marriott,* 64 Ala. 486. If it settle all the equities between the parties, it is, to that extent, final. If it is necessary to take an account, or other proceedings must be had to carry it into effect, to this last-named extent it is interlocutory, and may be moulded, modified, or altered by the chancellor, as any other interlocutory decree may be. The principles of relief cannot be

altered, for they are final. Directions for carrying the decree into effect may be modified, for they are interlocutory."—*Cochran v. Miller*, 74 Ala. 63. The principles above announced have been frequently applied in our cases; more recently in *Gainer v. Jones*, 176 Ala. 4C8, 58 South. 288, and in *Ex parte Jones*, 186 Ala. 567, 64 South. 960.

The decree in the instant case determined the respective interests of the parties in the property sought to be sold, and the necessity for a sale for an equitable division thereof. Thus far it was a final decree and doubtless beyond the control of the court. But the directions in the decree for the sale of the property— the manner of the sale, whether for cash or on terms, and whether at the courthouse or on the property itself—were all matters of an interlocutory nature, subject to modification as the court might deem best. So, too, with the question of incumbrances. This was a matter brought to the attention of the court only after the sale. It is recognized in the decree that the information as to these mortgages produced more or less confusion. The mortgages were executed during the pendency of this suit, and if their existence tended to effect a fair sale of the property, the court had the power and authority to take cognizance of that fact and so to mould or modify its decree as to remove these incumbrances as an obstacle to free bidding. These are merely matters arising out of the execution of the final decree, and are therefore of an interlocutory nature and within the court's control. Clearly, a court of equity is not so impotent as to be powerless to make a sale of property brought within its jurisdiction and subject to its confirmation, free from embarrassment produced by the incumbrance of an interest therein by one of the parties to the cause and created during the pendency of the suit. Under such circumstances we are of the opinion that the court can so mould its decree as to require the complainant's interest in the proceeds of the sale to be applied to the satisfaction and extinguishment of the incumbrance thus placed by him on his interest, and to that end to exercise full control over his portion of the purchase price.

Respondent is shown to be a non compos mentis and he will therefore be treated as a ward of the court. "It is the duty of the court to see that his rights are properly asserted and protected. For that purpose the guardian ad litem is under the control of the court."—*Austin v. Bean*, 101 Ala. 133, 16 South. 41. It clearly appears that what occurred at the sale had a

very marked effect on prospective bidders. The mere verbal assurance that the complainant would "take care of the mortgages" was clearly unsatisfactory to the mind of the layman—the business man—investing so considerable a sum. Indeed, it is shown, that one of the prospective bidders was advised by counsel not interested in this proceeding not to bid, because of the existence of the mortgages and the silence of the decree in reference thereto. We do not doubt that what was said by counsel for complainant, at the sale, was in entire good faith, and that he was merely doing what he conceived to be his duty, and he no doubt entertained the view that his statement, that the complainant would take care of the mortgages and the court would protect the purchaser, would be entirely satisfactory to those expecting to bid. From the proof offered at the hearing of the objections to the confirmation of the sale, however, it clearly appears that these assurances were not satisfactory.

In a proceeding of this character, as previously noted, the respondent is the ward of the court, and in making the sale it is the peculiar duty of the court to see that his interests are protected. The sale is made by the court, and until it is confirmed it is no sale. So, if the court is persuaded that, for any cause, whether surprise, mistake, or accident, the sale was not fairly conducted, or that the property was sold for much less than its real value, the sale should be set aside and a resale ordered.— *Helena Coal Co. v. Sibley,* 132 Ala. 651, 32 South. 718; *Roy v. O'Neill,* 168 Ala. 354, 52 South. 946; *Montague v. Int. Trust Co.,* 142 Ala. 544, 38 South. 1025; *Cruikshank v. Luttrell,* 67 Ala. 318.

Complainant on examination was asked: (1) "If a certified check is put up as a guarantee of the bid at a resale of the property, will you see that the mortgages and incumbrances are paid off before the sale?" and (2) "Will you permit your two-thirds of the bid of $20,000 to be applied to the payment of the mortgage?"

Complainant's reply to each question was, that he declined to answer. When it is recalled that these mortgages were placed on his interest in the property during the pendency of the cause, and in view of his refusal to answer the above inquiries, the importance—indeed, the necessity—of the court's taking cognizance of these incumbrances and ordering a sale free from same is emphasized. That this is within the power of the court, we have above stated, and should the court be of the opinion that the mortgagees themselves should be brought into the cause, to

[McCalley v. Finney.]

the end that a sale may be had "free from incumbrance," we are of the opinion that a cross-bill to that end by the respondent would be entirely proper.

We are not here so much concerned with the legal phase of the situation regarding the rights of the mortgagees acquired pending the suit; but conceding, for the purpose of this case, that these incumbrances were taken subject to the pending litigation and are therefore in subordination of any interest a purchaser at a judicial sale may acquire, yet if the existence of these incumbrances is calculated to produce distrust or confusion in the lay mind—in the mind of the business man seeking an investment of this character—then it would be the duty of the court, as far as within its power, to remove these obstacles to free bidding and a fair sale. And if the court is of the opinion that this cannot be accomplished by control of the proceeds of the sale belonging to the complainant, over whom it has in this case full jurisdiction, then it is within the power of the court to direct those representing the respondent in the cause to file a cross-bill in behalf of the ward of the court, bringing in these respective mortgagees.

What we have here said in regard to incumbrances applies with equal force to the leases made by complainant during the pendency of this suit and which appear to be unexpired. The record, however, does not, in our opinion, disclose that these leases had any material bearing upon the result of the sale. It results that the decree of the court below must be reversed, and one here rendered, sustaining the exceptions and objections to the report of the sale and confirmation thereof and setting the sale aside. The cause will be remanded to the court below for further proceedings therein.

(1, 2) All the justices participating in the consideration of this cause agree to a reversal and are in accord upon the proposition that a purchaser at the sale, under the circumstances discussed in the foregoing opinion, would get a title free from the incumbrances or leases herein mentioned.—*Stein v. McGrath,* 128 Ala. 175, 30 South. 792. The writer of the opinion, with whom Justice THOMAS concurs, entertains the view that the court has the power above discussed, looking to the cancellation of these mortgages, and that, as a practical proposition, this should be done. The other members of the court do not wish to commit themselves to what is said in that respect, however, and they therefore limit their concurrence to the conclusion only.

[Central of Georgia Ry. Co. v. Isbell.]

Reversed, rendered, and remanded. All the Justices concur, except SAYRE, J., not sitting.