## MILLER v. WALL et al.

## WALL et al. v. MILLER.

(8 Div. 868, 868–A.)

Supreme Court of Alabama. Dec. 16, 1926.

Rehearing Denied, with Modification, June 23, 1927.

**1. Wills ⬅535—Will held to show intent to disinherit previously deceased son or his children.**

Will devising all of testatrix's property to "my six daughters and only son, W. M. Watkins," and which in another place referred to "only son, W. M. Watkins," *held* to show intent of testatrix to disinherit a previously deceased son or his surviving children.

**2. Wills ⬅602, 603(5)—Marriage, decreed null for insanity, held valid within will as affecting time of division of property; "marriage."**

Testatrix gave property to children to hold jointly "till all of them marry, or die," intention being to provide home until their marriage. Daughter married and lived 18 months with husband. She was later committed to hospital for insane, and her husband secured decree declaring marriage null and void. *Held,* she was "married," within meaning of will, and annulment did not postpone time of distribution.

**3. Wills ⬅534—Where will gave property to certain children "till all of them marry or die," held, two children last surviving, being married, had lost right to common enjoyment of all property, but not right to share in final division of estate.**

Where testatrix gave property to children to hold jointly "till all of them marry or die," and provided that, in event of the death of either before final division with or without issue, the share of such child so dying should descend to her surviving sisters and brother, *held* two surviving children of testatrix, both married, had lost the right to common enjoyment of all the property, but not the right to share in final division of the estate.

**4. Wills ⬅630(11)—Estate devised to certain children "till all of them marry or die" held distributable when only two children, both married, survived, and mortgage for cost of improvement, made after death of testatrix, was then enforceable.**

Where will gave all of testatrix's property to certain children "till all of them marry or die," and provided that the share of any child dying before final distribution should go to survivors, *held,* estate was subject to final distribution when only two children, both married, sur-

vived, and at that time mortgage on property for cost of improvements, made after death of testatrix, could be set up and enforced.

**5. Tenancy in common ⬦⟿30—Cotenants of estate subject to mortgage for cost of improvements held entitled to contribution.**

Cotenants entitled to share in distribution of estate after satisfaction of mortgage for cost of improvements made after testatrix's death *held* entitled to have contribution from other cotenants in payment of mortgage, to extent of lawful charges and enhanced value of common property from such improvements.

Thomas, J., dissenting in part.

Appeal from Circuit Court, Madison County; J. E. Horton, Judge.

Bill by N. L. Steele, as guardian of Lizzie L. Watkins, non compos mentis, against Sadie Mae Miller and others for purpose of having the court construe the will of Sallie S. Watkins, deceased, and to remove a cloud from title alleged to consist of a mortgage, wherein the first-named defendant filed a cross-bill, claiming different construction of will than contended by complainant, and the second-named defendant filed a cross-bill, seeking foreclosure of mortgage, and wherein Young Wall, as guardian, was substituted for Steele, who died pending suit. From the decree, respondent Miller appeals, and complainant and others assign cross-errors. Reversed and remanded.

The bill was filed by N. L. Steele, as guardian of Lizzie L. Watkins, non compos mentis, for the purpose of having the court construe the will of Sallie S. Watkins, deceased, and declare the rights of the parties in certain property, conveyed by the will and certain other real estate, afterwards acquired by the administrator, or executor, with funds of the estate of Sallie S. Watkins, and to remove a cloud from the title alleged to consist of a certain mortgage executed by certain devisees and children of Sallie S. Watkins to Bertha Patterson. All the heirs and devisees of Sallie S. Watkins were made parties defendant, including the children of a deceased son (Carter Spotswood Crute) and the estates of those who were deceased, and also said Bertha Patterson. The bill also prayed for the removal into the equity court of the administration of the Watkins estate and the estates of her deceased devisees. Steele having died pending suit, the cause was revived in the name of Young Wall, as guardian. Answers were filed by the various defendants. The answer of this appellant was made a cross-bill, claiming that the proper construction of the will was other than contended by complainant, and praying for a sale of the property for division. Bertha Patterson's answer, by way of cross-bill, sought a foreclosure of the mortgage above mentioned.

The will of Mrs. Watkins was as follows:

"State of Alabama, Madison County.

"Know all men by these presents, that I, Sallie S. Watkins, of Huntsville, Alabama, in said county and state, being of sound mind and disposing memory, do make and publish this my last will and testament hereby revoking all former wills by me at any time heretofore made.

"First: I desire that all my just debts be paid by my executor and executrix hereinafter named.

"Second: I give, devise and bequeath all my real estate and personal property of whatever kind and description that I will hereinafter name to my six daughters and only son W. M. Watkins, to wit: Mrs. Ora Lee Lord, Irene Scruggs Stannard, Birdie Crute, Lizzie Louise Watkins, Lucy Cabaniss Watkins, Sadie Mae Miller and W. M. Watkins, the real estate situated on the north side of Randolph street and now occupied by me as a residence and the real estate situated on the south side of Commercial Row, and now occupied by me as my drug store, both pieces being in the city of Huntsville, Alabama, to be held and owned by my said six daughters, and only son W. M. Watkins, jointly, share and share alike, till all of them marry, or die.

"In the event of the death of either before a final division with or without issue, the share of such to descend to her surviving sisters and brother, it being my desire and intention to the best of my ability, to insure a home and support for my said daughters and only son.

"Third: I hereby set forth what articles of household furniture I desire each of my children to have, viz.: When a final division is made, as I desire all household furniture and articles to stay in the house until a final settlement.

"The parlor furniture, consisting of one mahogany safe, one marble slab table, three mahogany chairs, and one mahogany table, without slab, to my daughter Mrs. Stannard; my father's picture, my mahogany bed, wardrobe and washstand, and feather bed, that is in my room to my daughter Birdie Crute, the marble sideboard to my daughter, Lucy Cabaniss Watkins, the wardrobe standing in my room and the feather bed in the middle room I leave to Mrs. Ora Lord, my piano, the small feather bed, now in the back room to my daughter Mae Miller, the bedroom furniture now standing in the back room, consisting of one bed, wardrobe, and dresser, together with a marble washstand in my room, I leave to my daughter Lizzie Louise Watkins. The balance of household articles consisting of feather pillows and china, silver, etc. are to be evenly distributed at the discretion of my executor and executrix of my will to my six daughters and only son, when a final division is made.

"I hereby nominate and appoint my only son, W. M. Watkins, and my daughter Birdie Crute (or in case either should die) my daughter, Lucy Cabaniss Watkins, executor and executrix of this my last will and testament and direct that no bond, or settlement, be required by them by the probate court.

"In the testimony whereof I, the said Sallie S. Watkins have to this my last will and tes-

---

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tament subscribed my name and affixed my seal this the 8th day of November, 1907.

"[Signed]    Sallie S. Watkins.    [Seal.]

"Signed, sealed and delivered by the said Sallie S. Watkins as her last will and testament in the presence of us, who, at her request and in her presence and in the presence of each other, have subscribed our names as witnesses thereto.

"[Signed]      J. Robert Jones.
              "A. L. Rison."

From the agreed statement of facts the following facts also appear:

At the time the bill was filed all the devisees mentioned in item 2 of the will had died except Sadie Mae Miller and Lizzie Louise Watkins. One of these (Mrs. Stannard) had left a son surviving her, who is made a party to the suit. Three of the others, W. M. Watkins, Birdie Crute, and Lucy Watkins, had never married. One (Mrs. Lord) was a widow when the will was made and had since died, leaving no child. Sadie Mae Miller was at the time of the making of the will and still is a married woman. The facts relative to Lizzie Louise Watkins are these: On July 2, 1914, a marriage license was issued by the probate judge of Jefferson county, Ala., for her marriage to J. F. Winter, and on said date a marriage ceremony was performed and solemnized between said Lizzie Louise Watkins and said J. F. Winter by a duly authorized minister of the gospel in Jefferson ·county, Ala., and a marriage certificate · issued by him. They lived together as husband and wife in Jefferson county for 18 months following the ceremony, and for two years next preceding said marriage ceremony said Lizzie Louise Watkins lived in Jefferson county, Ala., at the home of her brother-in-law, and went about and conducted herself so that she was considered a sane, normal person, and was known as such during said time, and was so considered on the date of her marriage. At the time of her marriage she had never been adjudged insane, but had been committed to the Bryce Hospital for the Insane, at Tuscaloosa, for treatment on four separate occasions. After leaving Madison county, the place of her birth, she resided in Jefferson county, Ala., up to and at the time of her marriage and up to the time after her marriage when she was again committed to said Hospital for the Insane, where she now is. She never resided in Mobile county. After said marriage she was known as Lizzie Louise Winter or Mrs. Joseph Winter, up to the time her alleged marriage was annulled, and while she was then living with J. F. Winter as his wife, to wit, in July, 1915, a child was born to them, which died a few weeks after birth. J. F. Winter abandoned his said wife about four months prior to the time when she was last ·committed to the Bryce Hospital, and thereafter, on December 28, 1918, while she was so confined in said hospital in Tuscaloosa county, Ala., said Winter filed a bill in the circuit court of Mobile county, Ala., in equity, seeking an annulment of said marriage on the ground that said Lizzie L. Watkins was of unsound mind and mentally incapable of contracting marriage at the time the marriage was solemnized. Answer was filed by W. M. Watkins, who was at that time guardian of Lizzie Louise Watkins (or Elizabeth L. Winter), and on June 25, 1919, a decree was rendered declaring the marriage null and void.

The mortgage to Bertha Patterson was executed by W. M. Watkins, Irene S. Stannard, and Birdie Crute (three of the devisees named in item 2 of the will), all of whom had died when the bill was filed; and the money loaned to them was used in building two bungalows on the residence property of Sallie S. Watkins, described in item 2 of the will, and enhanced the value of said property to the extent of $10,000.

The circuit court decreed as follows:

"It is therefore ordered, adjudged, and decreed that, under item 2 of the Will of Sallie S. Watkins, deceased, the six daughters and one son of the decedent, Sallie S. Watkins, were given and devised the real estate situated on the north side of Randolph street and occupied by testator as a residence at the time she made her will, and also the real estate situated on the south side of Commercial row, and occupied by the testatrix, as a drug store; that said property, under the provisions of the will, was and is to be held by said six daughters and the only son named therein, without any division of same, and each to share equally in the rents and income thereof until all of them should marry or die; that as long as any of them remain unmarried, no division should be had of this' property; that the share of none of them terminated or should terminate by marriage, if any one or more of them die, the share or shares of the one or ones dying to descend to the survivors, and that the last survivor, whether married or unmarried, will hold the entire title in fee simple of the property.

"It is further ordered, adjudged, and decreed that under the present condition there can be no sale or division of the property, as the complainant is, in law, an unmarried woman, the decree annulling the marriage having the same effect as though the marriage had never existed. It is further ordered, adjudged, and decreed that the defendant Bertha Patterson has a lien upon real property on Randolph street, which was devised under item 2 of said will, except that portion thereof heretofore sold under the orders and decrees of this court; and that she has a lien on the interest of William M. Watkins, deceased, and of Irene Crute Stannard and of Birdie Crute, held and owned by them at the time of their death in the storehouse and lot on the corner of Commercial row and Madison street, which was purchased by the said W. M. Watkins, as administrator of the estate of Sallie S. Watkins, deceased, and her claim or demand against the shares of the property of the mortgagors in the personal property of Sallie S.

Watkins, deceased, so as to secure the balance due her on her mortgage debt as described in this proceeding."

Spragins & Speake, of Huntsville, for appellant.

Lizzie Louise Watkins was married, within the meaning of the will. The word "married," as used in the will, should be given the meaning intended by the testatrix. 40 Cyc. 1396, 1399, 1400. It was the evident purpose of the will to exclude Carter Spottswood Crute. Steele v. Crute, 208 Ala. 2, 93 So. 694. The lien created by Bertha Patterson is not a lien on appellant's property. Steele v. Crute, supra; 38 Cyc. 101, 102, 108, 109.

Cooper & Cooper, of Huntsville, for appellee John C. Stannard.

When one of the legatees named in the second item married or died, his or her interest in the property ceased. Birdie Crute having survived them all, her devisee took by inheritance from her. Steele v. Crute, 208 Ala. 2, 93 So. 694.

PER CURIAM. The case is tried upon an agreed statement of fact, with all the parties at interest before the court. The words "and owned," after the words "to be held," in the second paragraph of the will, are stricken by the amended pleading of the guardian of Lizzie Louise Watkins, a non compos mentis. The exhibits to the agreed statement of fact contain said words. However, this variance between the pleading and proof is immaterial. It is necessary that a sale of the properties be ordered to discharge the contract and receivership liens and to effectuate a division among joint owners.

[1] It is the opinion of the court that it was the intention of testatrix to exclude Carter Spottswood Crute from participation in either the temporary status or period of joint tenancy, or in the ultimate ownership or increment therefrom of Mrs. Watkins' properties, real or personal. The temporary joint tenancy was provided for and given the children named for the period and survivorship indicated, and that there was specific devise and bequest of the title and fee to the several persons named—Mrs. Ora Lee Lord, Irene Scruggs Stannard, Birdie Crute, Lizzie Louise Watkins, Lucy Cabaniss Watkins, Sadie Mae Miller, and W. M. Watkins —described by testatrix as "my said six daughters and *only* son." The repetition of the expression "daughters and only son," and the provision for surviving *sisters* and *brother* as to the temporary enjoyment and use, and the fact that no provision was made for Carter Spottswood Crute, as was made for the parties named, indicates the intention to disinherit said Carter Spottswood Crute, and to invest the children named with the temporary joint tenancy or estate for years, and to vest in them the fee or title to all of testator's property.

The foregoing is the result of the expressed intention of testatrix in her effort to provide (during the time and circumstances indicated) "a home and support" for the seven children named, and after the expiration of said joint occupancy and enjoyment that an equal division of the properties she classed as real and personal property as indicated be made among the named children, or in the event of one's death to devisees, legatees, or next of kin under the statutes of descent and distribution. Such is the result of the use of words by testatrix, having the effect of a limitation of the period of common or joint use, occupation, and maintenance; such words as "till all of them marry or die," "final division," "final settlement," "the death of either," and "surviving sisters and brother." That is to say, testatrix held her properties together until the termination of the declared period, *fact, or circumstances* for joint use and enjoyment, when the indicated and designated "final division" and "final settlement" should then be had, viz. "to be held and owned by my said six daughters, and only son W. M. Watkins, jointly, share and share alike, till all of them marry, or die." It is the opinion of the court that the succeeding clause, for death with or without issue before final division, etc., operated upon the enjoyment of the "home and support" for the period or state—"till all of them marry or die."

[2, 3] Under the agreed statement of facts, and construction given the will, Lizzie Louise Watkins is a married woman under the will, taking from her and Sadie Mae Miller, a married woman (as the only living of said named legatees and devisees) the right of common enjoyment, but not the right of share in final division of the estate vested in them and their brother and sisters named. The period for a "final division" and "final settlement" being at hand according to the terms of the will, it should be made in equity, administering the estate, effectuating partition or division of said properties of testatrix according to the statutes and under the rules provided for such matters in a court of equity.

It follows that testatrix did not die intestate as to any class of her properties, but that the same vested in the named children, to be divided when all of them "marry or die." All having died who are not married, and the period of division or final settlement being present, it should be further said by way of construction that (1) the several articles of personal property designated in the will be delivered to the respective daughters indicated, or, as to those being dead, to their legatees or next of kin under the statute; (2) that the articles of personal property embraced in the expression "balance of household articles," and not consumed or destroyed

in the common use or occupancy, be divided among the two living daughters and the several legatees or next of kin of the daughters and son who are dead; (3) that the drug store, depleted stock of drugs, and old fixtures passed under the second item of the will, to the several children named, and the additions thereto and betterments in the nature of additional stock, new fixtures, and the lot purchased from the income of the drug business, are, in equity; treated under the will as owned by testatrix, and may be claimed and distributed accordingly; (4) this increment from the joint estate may have been consumed and dissipated entirely by those having the common use thereof.

The fact that a large portion was added, by way of individual effort of the son and daughters remaining at home, to the corpus of Mrs. Watkins' estate by way of additional stock, fixtures, and the lot purchased by Wm. M. Watkins in his representative capacity, will, when claimed by said parties in interest, acquit the executors and administrators of said several joint owners of any such charges as rent or interest, etc. The fact that the doings of one or more of these children with and for the common fund, and during the period of a joint ownership, has been reported to the probate court, and decree entered therein, will not, in equity, subject to liability such joint owner or his or her interest in the corpus of the estate. This is the justice and law of the case, since such joint owners at will may have consumed and wasted said earnings, rather than saved the same and added it to the corpus of the estate, as was done by said brother and sisters.

[4, 5] It follows that any valid conveyances, or lien creating and attaching by virtue of contract, estoppel by said named daughters or son not under disability, or by the order of court and as an election of the court, for the non compos mentis, may now be set up and enforced, the time of a final division of the estate having arrived. The just observation is contained in the final decree that it appears from the evidence and the agreed statement of facts that the money loaned by the defendant Bertha Patterson to Wm. M. Watkins, Irene Crute Stannard, and Birdie Crute was used in the construction of a bungalow on the Randolph street property, known as the residence property, and that "the use of this money has enhanced the value of said property to the amount of $10,000, and she, the said Bertha Patterson," in equity (1) "is entitled to a *lien on said property* to secure her for the repayment of the balance due her for the money so loaned by her on her said mortgage"; that (2) she also has a claim "against the shares of the property" of the several mortgagors in the other properties of the estate of Mrs. Sallie S. Watkins which is now undisposed of, and also a lien under the mortgage in the share or interest of said Wm. M. Watkins, Irene Crute Stannard, and Birdie Crute, in the lot purchased by Wm. M. Watkins, and conveyance to him in a representative capacity. The last-named lot was purchased by Watkins and paid for by check on the Rison Banking Company, and is subject to the provisions of the will and the mortgage as indicated. And the said cotenants who are mortgagors, and those representing them in the respective estates, have the right of contribution from the other cotenants to the extent of the lawful charges and enhanced value to the common properties under equitable principles (Freeman on Cot. & P. [2d Ed.] p. 411 et seq.) and our statutes for partition (Code, §§ 9303, 9334) and constructions thereof by this court. Stokes v. Stokes, 212 Ala. 190, 101 So. 885; Clark v. Whitfield, 213 Ala. 441, 105 So. 200; Phillips v. Smith, 214 Ala. 382, 107 So. 841; Thomas v. Skeggs, 213 Ala. 159, 104 So. 395; Sandlin v. Anders, 210 Ala. 396, 98 So. 299.

It is the duty of a court of equity to see to it that the rights of the non compos mentis have been and are asserted and protected in the premises and under the respective changed conditions of estate, and for that purpose the guardian is under the control of the court, and subject to orders, directions, and elections by the court for such ward, which are effective and binding as touching her interest or estate (McCalley v. Finney, 198 Ala. 462, 73 So. 639; Austin et al. v. Bean, Executor, 101 Ala. 133, 16 So. 41), such orders as may be right in the premises and just to her joint owners, who have honestly acted for the common benefit and the improvement of the corpus of the estate and its real properties.

It should be stated that all of the joint owners who participated or acquiesced in the tearing down of the old dwelling and the building of the new houses, and parties before the court eventuating into receivership, are bound by that action and proceeding, and the court was and is now authorized to elect for the insane party or ward, as is just and according to equitable principles and our statutes, and to make all necessary orders in matters pursuant to a final division of the joint properties among the owners thereof, and to adjust and determine all claims and equities of the several cotenants, and incumbrancers and lienholders, without unnecessary delay, expense, and litigation.

The rehearing is granted to the extent of modifying the opinion rendered on the original hearing and substituting the foregoing construction of the will therefor. The decree of the circuit court is not in full accord with the foregoing construction of the will, and we adhere to the judgment of reversal and remandment of the cause as now rested on the appeal of Mrs. Miller.

Reversed and remanded upon the direct appeal of Mrs. Miller, and the costs of ap-

peal are taxed against John C. Stannard, as executor of the estate of Birdie Crute, deceased, and Young Wall, as guardian of Lizzie L. Watkins, non compos mentis.

ANDERSON, C. J., and SAYRE, SOMERVILLE, GARDNER, BOULDIN, and BROWN, JJ., concur.

THOMAS, J., concurs in the result, and dissents as to the construction given the will.

THOMAS, J. (dissenting). This will was considered in Steele v. Crute, 208 Ala. 2, 93 So. 694, and the necessary parties were indicated. It is evident that testatrix did not desire that any of her property go to Carter S. Crute, but that the same was given, as indicated, to the seven persons named.

Rules of construction of testamentary instruments need not be repeated here. Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Gunter v. Townsend, 202 Ala. 160, 79 So. 644; Jemison v. Brasher, 202 Ala. 578, 81 So. 80; Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; Steele v. Crute, 208 Ala. 2, 93 So. 694; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Henderson v. Henderson, 210 Ala. 73, 97 So. 353.

The testamentary intention is the guiding star; and that intention is to be gathered from the whole instrument. The fact that such writings are not always artfully drawn has been taken into consideration in order that a right construction be given. Unless it be clearly apparent from the whole instrument, it should not be held that it was the intent of a testator or testatrix to create intestacy. Caldwell v. Caldwell, 204 Ala. 161, 85 So. 493. And after a careful re-examination, we are impressed that it was the intent of the testatrix that the brother and sisters named take a fee by the will. That instrument shows with its first announcements and words of broad and appropriate disposition of real and personal property, and as to each class to effectuate complete devises and bequests; that it disposes of the absolute interest in personal property is clearly indicated in section "third," and from a consideration of the whole instrument the same construction will be adopted in regard to realty.

We should have observed at the outset that, at the time of filing of the bill, all of the devisees or legatees mentioned in the will had either died or married. The marriage of Lizzie Louise Watkins is treated as a valid marriage, within the meaning of the will, and is unaffected by the decree of annulment. The marriage referred to by Mrs. Watkins in her will was such as Lizzie had contracted. By the relation she had ceased to occupy and enjoy the property, as we shall see, as testatrix had intended. As to this, we may observe that it is the purpose and duty of the courts to ascertain the intention of the testatrix and construe the words employed accordingly. Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; 40 Cyc. p. 1396, § 2; 40 Cyc. pp. 1399, 1400, § E.

Adverting to the specific provisions of the instrument for construction, it will be noted that as to both realty and personalty the will speaks of a "final division," as if that was provided for and took place by reason of the will.

"This could only be true, if a fee was given in realty and an absolute interest in personalty was bequeathed."

The words, "till all of them marry or die," refer to the period of "final division," and not to the extent of the estate taken by the devisees. The second paragraph of section "second" refers to this date as a "final division," at least, this is its effect by a fair construction of the paragraph.

The fee thus created was held in common, without the right of partition or division, until "all" named devisees "marry or die." This and the effort to hold the property together for the purposes and parties indicated, is testator's intent. The provisions, "to insure a home and support for my said daughters and only son," and, "I desire all my household furniture and articles to stay in the house until a final settlement," unquestionably show that no partition was to be made until all marry or die. And the words, "jointly, share and share alike," so indicate or emphasize the intent that no partition is to be made until the coming into existence of the changed status indicated—marriage or death.

It follows that these fees in the daughters and son were subject to cross-conditional limitations in fee—during the period terminating on the marriage or death of all—to the surviving brother and sisters. Section second, paragraph 2. Thorington v. Thorington, 111 Ala. 237, 20 So. 407, 36 L. R. A. 385; Id., 82 Ala. 489, 1 So. 716; L. R. A. 1917D, 607 N; 40 Cyc. 1682.

A summary of the facts shows that four of such children without marriage died; Sadie Mae Miller and Lizzie Louise Watkins are married; and that Birdie survived them all and died. Her heir, legatee, or devisee would take from her, and the executor of the estate of said Birdie Crute is entitled to the same for the benefit of the devisee, John D. Stannard, who was the nephew of Birdie. That nephew had taken nothing by descent from his mother. Her death, prior to the period of division, had subjected her share in fee to the conditional limitation in favor of her brother and sisters. When Birdie died, all had married or died. At that time, the conditional limitations were no longer effective to interfere with or prevent the devise or descent of Birdie's shares. At the time of her death, she had a clear fee or unconditional estate to devise, and her nephew takes under her will, if such there was. The extent of the estate so

taken by this nephew was Birdie's original fee and her accrued interest, estates, or shares from her deceased brother and sisters or their survivors. Subject to liens, she may have imposed thereon by contract or by way of estoppel. Lombard v. Witbeck, 173 Ill. 396, 51 N. E. 61.

From this, it should follow that Lizzie and Mae, having married, have no interest in the properties specifically indicated, including the "drug store."

The foregoing is the opinion of the writer only.