### SUTTON v. LEIB.
### No. 10294.

United States Court of Appeals
Seventh Circuit.

April 26, 1951.

Rehearing Denied May 22, 1951.

Howard R. Blalock, Springfield, Ill., Joseph R. Carson, Jean S. Carson, and John Alan Appleman, all of Urbana, Ill., for appellant.

A. M. Fitzgerald, Walter T. Day, Springfield, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This appeal presents another aspect of the problem of migratory divorce. Plaintiff sued defendant, her first husband, for 40 alimony installments from August 1, 1944 to November 1, 1947, inclusive, alleged to be due under a divorce decree. Defendant denied the claim on the ground that his liability under the decree had been terminated by her remarriage on July 3, 1944. Her third marriage was to one Sherwood Sutton on November 21, 1947. The court rendered summary judgment in favor of defendant on his motion therefor, and the appeal is from that judgment.

---

The facts out of which the controversy arose are undisputed. Plaintiff obtained a decree of divorce from defendant in 1939 in an Illinois court. The decree provided for the payment of $125 "on or before the first day of each calendar month * * * for so long as the plaintiff shall remain unmarried, or for so long as this decree remains in full force and effect * * *" After obtaining her divorce plaintiff moved to New York.

On July 3, 1944, plaintiff married Walter Henzel in Reno, Nevada. Henzel had on that day obtained a decree of divorce in a Nevada court from Dorothy Henzel, a New York resident. She had been served only by publication and did not appear. Immediately following the divorce and remarriage plaintiff and Henzel returned to New York. On August 3, 1944, Dorothy Henzel instituted a separate maintenance proceeding against Walter in a New York court and this proceeding resulted in a decree in her favor, awarding separate maintenance and declaring the Nevada divorce null and void. Plaintiff had ceased living with Henzel immediately after service of summons in Dorothy Henzel's suit against him, and in January 1945 she filed suit against him for annulment of their marriage. On June 6, 1947 the New York court entered an interlocutory decree which became final three months later, declaring the nullity of the marriage of plaintiff and Henzel on the ground that he had another wife living at the time of the marriage.

Defendant had made all the alimony payments due under the Illinois decree to and including that due on May 1, 1944. After the Nevada marriage some correspondence ensued between New York counsel for plaintiff and defendant's counsel relative to further payments. Defendant claimed a credit on account of some advances previously made to plaintiff. The matter was settled by the remittance of $180 in full on the payments due June 1 and July 1. In acknowledging the receipt of this amount by letter of September 8, 1944, plaintiff's counsel stated, "This remittance satisfies in full the alimony claim of the former Mrs. Leib." Plaintiff was remarried in November 1947.

In rendering judgment for defendant the court held that it was unnecessary to determine which of the two conflicting judgments was entitled to the full faith and credit guaranteed by the Constitution of the United States, art. 4, § 1, in view of the fact that the parties had entered into a contract settling the question of accrued alimony at a time when both treated the Nevada decree as valid and in full force and effect, and that no reason appeared why the settlement and release then effected should not be held to constitute a binding obligation upon each.

We cannot agree with the reasoning of the court that acknowledgment of the remittance of the balance due on the June and July payments with the statement that it satisfied in full the alimony claim of the former Mrs. Leib operated of itself to bar any further claims on her part. It covered an amount admittedly due on past installments—since the divorce decree required that payments be made on the first of each month, her marriage on July 3 would not entitle defendant to an apportionment of the amount for that month, and since the amount claimed by him to have been advanced to her was credited on the $250 due for the two months, there could not be said to be any compromise of a disputed claim. Acceptance of the amounts admittedly past due could not operate to extinguish any future liability arising under the decree. San Fillippo v. San Fillippo, 340 Ill.App. 353, 92 N.E.2d 201. We think this is true even though it appears of record that all but one of the series of nine letters between counsel relative to the June and July payments were written after plaintiff had knowledge of the pending separate maintenance action and had ceased living with Henzel.

There remains the question as to the effect of the Nevada remarriage on defendant's obligation to pay alimony to plaintiff "for so long as (she) shall remain unmarried * * *." The answer to this, we believe, turns on the validity of the marriage in Nevada, where it was performed, rather than in New York, where it was annulled. Section 121 of the Restate-

ment, Conflict of Laws, relating to the law governing the validity of marriage, states the rule, "Except as stated in §§ 131 and 132 [which we deem inapplicable here], a marriage is valid everywhere if the requirements of the marriage law of the state where the contract of marriage takes place are complied with." See also Peirce v. Peirce, 379 Ill. 185, 39 N.E.2d 990. And of course the validity of the Nevada remarriage turns on the validity in Nevada of the antecedent Nevada divorce of Henzel from his New York wife.

We have searched the numerous cases decided by the Supreme Court of the United States on the subject of migratory divorce for a definitive holding as to the judicial status of such divorce in the state that decreed it. It appears to be assumed that the decree is valid and binding in the state where it is rendered. Thus Mr. Justice Frankfurter remarks in his concurring opinion, Williams v. North Carolina, 317 U. S. 287, 307, 63 S.Ct. 207, 217, 87 L.Ed. 279, "It is indisputable that the Nevada decrees here, like the Connecticut decree in the Haddock [v. Haddock] case, [201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867] were valid and binding in the state where they were rendered." And Mr. Justice Murphy, concurring in Williams v. State of North Carolina, 325 U.S. 226, 239, 65 S.Ct. 1092, 1099, 89 L.Ed. 1577, states that "The State of Nevada has unquestioned authority, consistent with procedural due process, to grant divorces on whatever basis it sees fit to all who meet its statutory requirements. It is entitled, moreover, to give to its divorce decrees absolute and binding finality within the confines of its borders." And Mr. Justice Rutledge, dissenting in the same case, 325 U.S. at page 244, 65 S.Ct. at page 1102, comments on the fact that the Nevada judgment was not voided by the decision. "It could not be, if the same test applies to sustain it as upholds the North Carolina convictions. It stands, with the marriages founded upon it, unimpeached." He and Mr. Justice Black, also dissenting, both call attention to the fact that the Court, in its decision, does not hold that the Nevada judgment is invalid in Nevada. Hence, in spite of the absence of a clear-cut statement

in any of the main opinions of the Court as to the status of the Nevada decree in Nevada after a successful extraterritorial challenge of it, we think we may spell out authority for our assumption that it survives such challenge and remains in full force and effect within the confines of the state of Nevada until and unless it is set aside upon review in that state.

 Assuming the validity of the divorce in Nevada, then the party or parties thereto resumed full marital capacity in that state. It follows that, so far as the state of Nevada is concerned, there was no inhibition against the remarriage of Walter Henzel in that state, and no reason appears for challenging his marriage there to plaintiff immediately after the decree of divorce was rendered. Under the terms of the Illinois decree of divorce of plaintiff and defendant, such marriage immediately terminated the obligation of the latter to continue the alimony payments required thereby. We think that obligation was not reinstated and revived by the subsequent annulment of the Nevada marriage in New York.

Judgment affirmed.