## SUTTON *v.* LEIB.

No. 143.   Submitted December 3, 1951.—Decided March 3, 1952.

*John Alan Appleman* and *Edward D. Bolton* submitted on brief for petitioner.

*A. M. Fitzgerald* submitted on brief for respondent.

MR. JUSTICE REED delivered the opinion of the Court.

By reason of a divorce in an Illinois state court, with a judgment for monthly installments of alimony until remarriage, petitioner asserts that her divorced husband, the respondent Leib, is liable for unpaid installments of alimony. Asserting diversity jurisdiction, petitioner, a divorcee, filed suit in the United States District Court for the Southern District of Illinois. Claim for recovery is made, notwithstanding a later marriage by petitioner to another in Nevada, subsequently annulled in New York, for the period from the Nevada remarriage to her third presumably valid marriage in New York to a third man. To respondent's plea that the Illinois alimony obligation was finally ended by the Nevada remarriage of petitioner, Mrs. Sutton relied upon the New York annulment decree as determining that her Nevada marriage was void. She contends that the Full Faith and Credit Clause of the Federal Constitution requires that Illinois hold her Nevada marriage void *ab initio* by virtue of the New York annulment; [1] that as the annulment decree obliterates the existence of her Nevada marriage respondent is liable for unpaid alimony until her New York marriage to Sutton.

---

[1] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which

The trial court rendered summary judgment for respondent and the Court of Appeals for the Seventh Circuit affirmed. 188 F. 2d 766. The affirmance was bottomed on the conclusion that, as the Nevada marriage of petitioner was valid in Nevada, it terminated the liability for alimony under the Illinois judgment of divorce. The court thus gave full faith and credit to the Nevada marriage rather than the New York annulment.[2] Because

---

such Acts, Records and Proceedings shall be proved, and the Effect thereof." U. S. Constitution, Art. IV, § 1.

Pursuant to the section, Congress early prescribed the effect substantially in the words now used:

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U. S. C. § 1738.

[2] "We have searched the numerous cases decided by the Supreme Court of the United States on the subject of migratory divorce for a definitive holding as to the judicial status of such divorce in the state that decreed it. It appears to be assumed that the decree is valid and binding in the state where it is rendered. Thus Mr. Justice Frankfurter remarks in his concurring opinion, Williams v. North Carolina, 317 U. S. 287, 307, . . . 'It is indisputable that the Nevada decrees here, like the Connecticut decree in the Haddock . . . case, . . . were valid and binding in the state where they were rendered.' And Mr. Justice Murphy, concurring in Williams v. State of North Carolina, 325 U. S. 226, 239, . . . states that 'The State of Nevada has unquestioned authority, consistent with procedural due process, to grant divorces on whatever basis it sees fit to all who meet its statutory requirements. It is entitled, moreover, to give to its divorce decrees absolute and binding finality within the confines of its borders.' And Mr. Justice Rutledge, dissenting in the same case, 325 U. S. at page 244, . . . comments on the fact that the Nevada judgment was not voided by the decision. 'It could not be, if the same test applies to sustain it as upholds the North Carolina convictions. It stands, with the marriages founded upon it, unimpeached.' He and Mr. Justice Black, also dissenting, both call attention to the fact that the Court, in its decision, does not hold that the Nevada judgment is invalid in Nevada. Hence, in spite of the absence of a clear-cut

disposition of this case required treatment of an important question of federal law, review was granted on a writ of certiorari. 342 U. S. 846.

*Facts.* Petitioner, Verna Sutton, divorced respondent, Leib, in Illinois in 1939, and under the terms of the decree of divorce was awarded $125 "on or before the first day of each calendar month . . . for so long as the plaintiff shall remain unmarried, or for so long as this decree remains in full force and effect." On July 3, 1944, in Reno, Nevada, petitioner married Walter Henzel who had that day obtained a Nevada divorce from Dorothy Henzel, a resident of New York who had not been served in Nevada and who made no appearance there. One month later, August 3, 1944, Dorothy Henzel brought a separate maintenance proceeding in the courts of New York. Walter Henzel defended this suit. The proceeding resulted in a decree in Dorothy Henzel's favor, declaring Walter Henzel's Nevada divorce from her "null and void." With the service of Dorothy's process on Walter, petitioner ceased living with him, and in January 1945 filed suit in New York for annulment of her marriage to him. In

statement in any of the main opinions of the Court as to the status of the Nevada decree in Nevada after a successful extraterritorial challenge of it, we think we may spell out authority for our assumption that it survives such challenge and remains in full force and effect within the confines of the state of Nevada until and unless it is set aside upon review in that state.

"Assuming the validity of the divorce in Nevada, then the party or parties thereto resumed full marital capacity in that state. It follows that, so far as the state of Nevada is concerned, there was no inhibition against the remarriage of Walter Henzel in that state, and no reason appears for challenging his marriage there to plaintiff immediately after the decree of divorce was rendered. Under the terms of the Illinois decree of divorce of plaintiff and defendant, such marriage immediately terminated the obligation of the latter to continue the alimony payments required thereby. We think that obligation was not reinstated and revived by the subsequent annulment of the Nevada marriage in New York." 188 F. 2d at 768.

this proceeding Walter Henzel also appeared. On June 6, 1947, the New York court entered an interlocutory decree after trial which became final three months thereafter. This judgment declared that petitioner's marriage to Henzel was "null and void" for the reason that he "had another wife living at the time. of said marriage."

There was no appeal in Nevada from the Nevada divorce of the Henzels. No further action was taken in Nevada concerning the marriage of Henzel and petitioner, and no appeal taken in New York from the judgment holding the Henzels' Nevada divorce null and void or from the judgment annulling the Nevada marriage of Henzel and petitioner. The jurisdiction of the New York courts to enter the judgments is unquestioned.

*Analysis of Issues.* Collection of alimony is sought against respondent who was not a party to any of the judicial proceedings in Nevada or New York and appears in none of the records from either state. Illinois law as to respondent's liability governs the federal court's decision of this case.[3] But the responsibility for the decision of federal constitutional issues involved rests finally on this Court.[4] This controversy presents, fundamentally, a problem of Illinois law, to wit, the Illinois rule as to the effect of a subsequently annulled second marriage on the alimony provisions of an Illinois divorce awarding support until remarriage.

As the Full Faith and Credit Clause requires Illinois to recognize the validity of records and judicial proceedings of sister states, the conclusion will not vary because the post-divorce recorded events underlying this litigation took place in other states than Illinois. This is not an alleged conflict of decisions between states such as existed

---

[3] *Erie R. Co.* v. *Tompkins*, 304 U. S. 64; *Angel* v. *Bullington*, 330 U. S. 183.

[4] *Barber* v. *Barber*, 323 U. S. 77, 81.

in certain tax and estate cases.[5]  Rather the situation more nearly approaches *Barber* v. *Barber,* 323 U. S. 77. There Tennessee refused full faith and credit to a North Carolina judgment for arrears of alimony on the ground of its lack of finality in North Carolina. We reversed Tennessee's decision, not on the ground of error in Tennessee rules of law but on our determination that the North Carolina judgment was final and therefore enforceable as a matter of federal law in Tennessee under the Full Faith and Credit Clause. So in this case, Illinois' conclusion as to this claim for alimony must be reached under Illinois law on the basis of giving the various proceedings the effect to which the Constitution entitles them. In this way the Full Faith and Credit Clause performs its intended function of avoiding relitigation in other states of adjudicated issues, while leaving to the law of the forum state the application of the predetermined facts to the new problem. *Riley* v. *New York Trust Co.,* 315 U. S. 343, 348–349.

*Legal Effect of Nevada and New York Events.* Petitioner and Henzel were married in Nevada. Thereafter petitioner brought her putative husband before the New

---

[5] *Worcester County Co.* v. *Riley,* 302 U. S. 292, and cases cited. In this case this Court held, p. 299, as a basis that the action was against a state without its consent, that the Full Faith and Credit Clause does not require uniformity of decision as to domicile between the courts of different states. Cf. *Texas* v. *Florida,* 306 U. S. 398, 410.

*Riley* v. *New York Trust Co.,* 315 U. S. 343. In this case Georgia had determined that decedent's domicile was Georgia. New York had determined the domicile was New York. In an interpleader suit in Delaware, involving the transfer of stock of a Delaware corporation to one of the two personal representatives of decedent appointed by the respective states, this Court held, where neither personal representative had been a party to the determination of domicile in the state of the other, Delaware was free to determine the question of domicile and require delivery of the stock to that representative.

York court. Petitioner and Henzel subjected themselves to the jurisdiction of the New York court and its decree annulling their Nevada marriage was entered with jurisdiction, so far as this record shows, of the parties and the subject matter. The burden is upon one attacking the validity of a judgment to demonstrate its invalidity.[6] That judgment is *res judicata* between the parties and is unassailable collaterally.[7] As both parties were before the New York court, its decree of annulment of their Nevada marriage ceremony is effective to determine that the marriage relationship of petitioner and Henzel did not exist at the time of filing the present complaint in Illinois for unpaid alimony. The effect in Illinois of the New York declaration of nullity on the obligation for alimony is a matter of Illinois law hereinafter treated. The New York annulment determines the marriage relationship that is the marital status of petitioner and Henzel, just as any divorce judgment determines such relationship. If the Nevada court had had jurisdiction by personal service in the state or appearance in the case of Henzel and the first Mrs. Henzel, its decree of divorce would have been unassailable in other states.[8] So as to the New York decree annulling the marriage, New York had such jurisdiction of the parties and its decree is entitled to full faith throughout the Nation, in Nevada as well as in Illinois.[9]

The New York invalidation of the Nevada divorce of the Henzels stands in the same position. As Mrs. Henzel was neither personally served in Nevada nor entered her appearance, the Nevada divorce decree was subject to

---

[6] *Barber* v. *Barber, supra,* 86; *Cook* v. *Cook,* 342 U. S. 126, 128.

[7] *Treinies* v. *Sunshine Mining Co.,* 308 U. S. 66, 76–78.

[8] *Sherrer* v. *Sherrer,* 334 U. S. 343.

[9] *Treinies* v. *Sunshine Mining Co., supra; Milliken* v. *Meyer,* 311 U. S. 457, 462.

attack and nullification in New York for lack of jurisdic-tion over the parties in a contested action.[10]

This leads us to hold that the conclusion of the Court of Appeals quoted in note 2, *supra,* is incorrect under the facts of this case. The marriage ceremony performed for petitioner and Henzel in Nevada must be held invalid because then Henzel had a living wife. The New York annulment held the Nevada marriage void. Nevada declares bigamous marriages void.[11]

*Conclusion.* The determination that the New York adjudications must be given full faith and credit in Illinois, however, does not decide this controversy. Although the federal courts must give the same force and effect to the New York decrees as Illinois does,[12] a question of state law remains. Does Illinois give the marriage ceremony of an annulled marriage sufficient vitality to release Leib, the respondent, from his obligation to pay alimony subsequently due?

Full faith to the New York annulment, which is conclusive everywhere as to the marriage status of petitioner and Henzel, compels Illinois to treat their Nevada marriage ceremony as void.[13] The force of that rule, however, does not require that the effect of the New York annulment on rights incident to this declaration of the invalidity of the Nevada marriage ceremony shall be the same in all states. Annulment is, in respect to its effect, analogous to divorce. A valid divorce, one spouse appearing only by constructive service, that frees the parties from the bonds of matrimony throughout the United States

---

[10] *Cook* v. *Cook, supra,* citing *Williams* v. *North Carolina,* 325 U. S. 226; *Rice* v. *Rice,* 336 U. S. 674. Cf. *Sherrer* v. *Sherrer, supra.*

[11] Nev. Comp. Laws, 1929, § 4066; *Poupart* v. *District Court,* 34 Nev. 336, 123 P. 769.

[12] See note 1, and *Union & Planters' Bank* v. *Memphis,* 189 U. S. 71, 75.

[13] *Williams* v. *North Carolina,* 317 U. S. 287, 291–304.

does not require a second state to accord its terms the same result in litigation over separable legal rights as the decree would have in the courts of the state entering the decree.[14] Without reference to the effect of a divorce on incidents of the marriage relation where both spouses are actually before the court, we think it equally clear, as a matter of constitutional law, that Illinois is free to decide for itself the effect of New York's declaration of annulment on the obligations of respondent, a stranger to that decree.

Although the present proceeding necessarily presents questions of state law, resting as it does upon diversity jurisdiction, the case does not present any non-federal issue suitable for separation and determination in the state courts.[15] The remaining matters of state law are for the decision of the federal courts.[16]

It is frequently said, as a legal fiction, that annulment makes the annulled marriage ceremony as though it had never occurred. That fiction is variously treated in different jurisdictions.[17] For example in New York, the

---

[14] *Estin* v. *Estin*, 334 U. S. 541. See *MacKay* v. *MacKay*, 279 App. Div. 350, 110 N. Y. S. 2d 82.

[15] *Propper* v. *Clark*, 337. U. S. 472, 489, *et seq.*, and cases cited. Furthermore the Court of Appeals has already determined that certain payments of alimony made to petitioner by respondent in settlement of installments accruing prior to the Nevada marriage do not amount to a compromise of the disputed claim. 188 F. 2d at 767–768. Cf. *Moore* v. *Shook*, 276 Ill. 47, 55, 114 N. E. 592; *Darst* v. *Lang*, 367 Ill. 119, 10 N. E. 2d 659.

[16] *Meredith* v. *Winter Haven*, 320 U. S. 228; *Propper* v. *Clark*, *supra*, 486.

[17] *In re Wombwell's Settlement*, [1922] 2 Ch. 298. Here a marriage settlement was in trust for the settlor "until the said intended marriage" and thereafter on declared trusts for the spouses. The marriage was annulled. The settlor was held entitled to the funds as a valid marriage was intended and this one was void *ab initio*. Likewise *Chapman* v. *Bradley*, 33 L. J. Ch. 139. Cf. *In re Garnett*.

petitioner apparently would recover alimony after annulment but not for the period between the remarriage ceremony and the annulment.[18]

The Court of Appeals of the Seventh Circuit has declared on an issue as to whether the petitioner's claim for alimony had been adjusted that there has been in this controversy no compromise of a disputed claim. See note 15, *supra*. We accept that ruling. That court has not had occasion to consider the effect of the annulment under the law of Illinois on the respondent's alimony obligation.

Where there had been a valid foreign marriage, followed by an annulment, based partly on issues not here involved, Illinois has held that the obligation of a former husband to pay alimony until the wife "remarry" is termi-

---

74 L. J. Ch. 570; *Bishop* v. *Smith*, 1 Vict. L. R. 313; *P.* v. *P.*, [1916] 2 I. R. 400.

See Vernier, American Family Laws, § 53, Suits to Annul—Effect of Judgment, and § 48, Issue of Prohibited Marriages (this includes annulment).

New York declares some marriages void from the time their nullity is declared. McKinney's Consolidated Laws of New York, Book 14, Domestic Relations Law, § 7.

For effect on different incidents, see *Henneger* v. *Lomas*, 145 Ind. 287, 44 N. E. 462 (seduction, tort); *Burney* v. *State*, 111 Tex. Cr. R. 599, 13 S. W. 2d 375 (seduction, criminal); *Miller* v. *Wall*, 216 Ala. 448, 113 So. 501 (marriage, later annulled, held annulment did not postpone distribution of estate, distributable marriage); *Deeds* v. *Strode*, 6 Idaho 317, 55 P. 656 (civil action); *Figoni* v. *Figoni*, 211 Cal. 354, 295 P. 2d 339 (distribution of community property).

[18] This avoids double support to the wife. *Sleicher* v. *Sleicher*, 251 N. Y. 366, 167 N. E. 501. See *Frank* v. *Carter*, 219 N. Y. 35, 113 N. E. 549 (husband liable for necessaries prior to annulment); *In the Matter of Moncrief*, 235 N. Y. 390, 139 N. E. 550 (child of annulled marriage, illegitimate).

The *Sleicher* case called forth many comments when it was handed down. See 43 Harv. L. Rev. 109; 30 Col. L. Rev. 877; 25 Ill. L. Rev. 99; 14 Minn. L. Rev. 93; 39 Yale L. J. 133.

nated by the remarriage.[19]  What the Illinois rule is when the foreign (Nevada) marriage is judicially declared invalid, under present circumstances, or whether respondent, if liable at all, is liable for the period during which Henzel may have owed support under a rule such as that of *Sleicher* v. *Sleicher*, 251 N. Y. 366, 167 N. E. 501, has not, so far as we know, been determined.

The judgment of the Court of Appeals should be reversed and the cause remanded to the Court of Appeals for further proceedings in conformity with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK agrees with the Court of Appeals and would affirm its judgment.

MR. JUSTICE FRANKFURTER, concurring.

This case illustrates what little excuse is left for diversity jurisdiction, certainly since *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, has curbed the unwarranted freedom of federal courts to fashion rules of local law in defiance of

---

[19] *Lehmann* v. *Lehmann*, 225 Ill. App. 513, saying:

"We think that said words as so used were intended by the parties to refer to the ceremony or act of marriage as distinguished from the status or relation thereafter." P. 522.

"Even though it be considered that such marriage was not a valid one *in Illinois*, it was valid in New Jersey, where performed, and also valid in their subsequent successive domiciles, and we think that under all the facts disclosed it should be held, contrary to the finding of the chancellor in the decree appealed from, that she remarried within the meaning of the words contained in said divorce decree of April 1, 1915, and in the written agreement entered into between the parties about that time, and that she thereby elected to forfeit, and did forfeit, her right to receive alimony for her own support thereafter from respondent." P. 526.

The Illinois court was influenced by the practical construction given to the alimony decree by the parties. Pp. 516, 527. See *Wilson* v. *Cook*, 256 Ill. 460, 100 N. E. 222.

local law. For my Brother REED naturally enough concludes that the turning point of this case is a matter of Illinois law having no relation whatever to the essential functions which federal courts serve, and a matter which is peculiarly ill-suited for determination by a federal court. The issue in this case is whether the obligation imposed by an Illinois divorce decree to pay alimony "for so long as plaintiff shall remain unmarried" ceases under Illinois law when the plaintiff goes through the form of another marriage ceremony regardless of the binding validity of such a ceremony. Illinois is free to consult solely her own will whether such a provision in a decree relates merely to ceremony or requires a union with a spouse legally free to marry. On that crucial issue, we are told, there is no Illinois law. By what seems to me undesirable judicial administration, the ascertainment— for all I know the formulation—of Illinois law is committed to a federal court which in the very nature of things can render only a tentative and indecisive judgment.

Tentative and indecisive, because whatever view the Court of Appeals for the Seventh Circuit takes on this question may be authoritatively supplanted by the only court that can finally settle the issue, namely, the Supreme Court of Illinois. Such a decision from the Illinois Supreme Court can readily be solicited by the plaintiff through the Illinois declaratory judgment procedure. It is precisely the kind of controversy for which the utility of the device of a declaratory judgment has been so fulsomely acclaimed. Instead of availing itself of this modern procedure, the Court makes itself a party to a discord which passeth understanding.

No, doubt the Court of Appeals may tentatively answer this question of Illinois law so far as the immediate parties are concerned. But it is not conducive to the interests of law in general that this Court should compel a

decision in a federal court which tomorrow or the day after may be definitively contradicted by the State court with the final say. I would remand the case to the Court of Appeals to be held by it until the plaintiff seeks with all deliberate speed a decision on the crucial question of the case in the Illinois courts.

Subject to this qualification, I agree with the opinion of the Court.