**Victor H. TRAMMELL, Jr., Appellant,**

v.

**Mary B. TRAMMELL, Appellee.**

**No. 3350.**

Court of Civil Appeals of Texas.

Waco.

April 5, 1956.

Rehearing Denied May 17, 1956.

Cox, Wagner, Adams & Wilson, John Q. Adams, Harlingen, for appellant.

Carter, Stiernberg & Skaggs, Harlingen, for appellee.

McDONALD, Chief Justice.

Plaintiff Mary B. Trammell filed this suit against defendant Victor H. Trammell, Jr., for alimony alleged to be due her under the terms of a divorce decree rendered in the State of California. The Trial Court entered a summary judgment for plaintiff for the amount sued for and defendant appeals.

The pertinent facts upon which the summary judgment was granted are as follows: Plaintiff was granted a divorce from defendant on *21 January 1948* in California, such decree providing that defendant should pay plaintiff $130 per month alimony *"during the lifetime of plaintiff or until her remarriage."* On 10 August 1952 a marriage ceremony was performed between plaintiff and one Harrison Mosier. The marriage was performed pursuant to a proper license, by a minister, and registered according to the laws of California. On *12 November 1952* a California court having jurisdiction of the parties entered a judgment of annulment of the marriage between plaintiff and Mosier. Such judgment recited that the marriage of plaintiff and Mosier was *"void from the beginning, and is annulled."*

On the foregoing state of the record, the Trial Court held that the judgment of annulment of void marriage entered by the California court, *constituted a finding that plaintiff had not remarried on 10 August 1952,* and that plaintiff was entitled to the alimony sued for (being the amount accruing after 10 August 1952), and entered a summary judgment for plaintiff to such effect.

The only question raised in this appeal is whether the attempted marriage of plain-

tiff to Mosier on 10 August 1952 terminated her rights to alimony under her divorce decree from defendant. Defendant contends that the record shows an issuable fact as to whether or not plaintiff did or did not remarry, for which reason summary judgment for plaintiff was improper.

The case of Sutton v. Leib, 342 U.S. 402, 72 S.Ct. 398, 401, 96 L.Ed. 448, decided by the United States Supreme Court, involved a fact situation almost identical to that in the case at bar. In that case plaintiff sued to recover alimony due her under an Illinois decree requiring payment until remarriage. In that case the plaintiff had remarried to a man named Henzel but such marriage had been annulled in New York. The Supreme Court held that the New York annulment must be given full faith and credit by the Illinois court *as determining the marriage status of plaintiff and Henzel, but that the effect of the annulment on the duty of defendant to pay alimony should be determined under Illinois law.*

In the Leib case, supra, the U. S. Supreme Court said:

"*This controversy presents fundamentally a problem of Illinois law, to-wit, the Illinois rule as to the effect of a subsequently annulled second marriage [annulled in New York] on the provisions of an Illinois divorce awarding support until remarriage.*

\* \*. \* \* \* \*

"*That judgment (of annulment) is res judicata between the parties and is unassailable collaterally.*

\* \* \* \* \* \*

"*The determination that the New York adjudications must be given full faith and credit in Illinois, however, does not decide this controversy,* \* \* \* *a question of state law remains. Does Illinois give the marriage ceremony of an annulled marriage sufficient vitality to release Leib* \* \* \* *from his obligation to pay alimony subsequently due?*

"*Full faith to the New York annulment, which is conclusive everywhere as to the marriage status of petitioner and Henzel, compels Illinois to treat their* \* \* \* *marriage* \* \* \* *as void. The force of that rule, however, does not require that the effect of the New York annulment on rights incident to this declaration of the invalidity of the Nevada marriage ceremony shall be the same in all states. ʌAnnulment is, in respect to its effect, analogous to divorce.* \* \* \* *Illinois is free to decide for itself the effect of New York's declaration of annulment on the obligations of respondent, a stranger to that decree.*

\* \* \* \* \* \*

"*It is frequently said, as a legal fiction, that annulment makes the annulled marriage ceremony as though it had never occurred. That fiction is variously treated in different jurisdictions.*

\* \* \* \* \* \*

"*What the Illinois rule is when the foreign* \* \* \* *marriage is judicially declared invalid, under present circumstances, or whether respondent, if liable at all* \* \* \* *has not, so far as we know, been determined.*

\* \* \* \* \* \*

"*The issue in this case is whether the obligation imposed by an Illinois divorce decree to pay alimony 'for so long as plaintiff shall remain unmarried' ceases under Illinois law when the plaintiff goes through the form of another marriage ceremony regardless of the binding validity of such a ceremony. Illinois is free to consult solely her own will whether such a provision in a decree relates merely to ceremony or requires a union with a spouse legally free to marry.*"

Analyzing the case at bar in the light of the Supreme Court's decision, supra, we conclude that this controversy presents basically the problem of determining under Texas law, the effect of a second marriage

entered into by plaintiff but subsequently annulled, on the obligations of the defendant herein to pay alimony to plaintiff under the provisions of a California divorce decree awarding alimony "until remarriage."

The Full Faith and Credit Clause of the United States Constitution, art. IV, Sec. 1, requires Texas to recognize the validity of records and judicial proceedings of California. The decree of the California court annulling the plaintiff's marriage with Mosier is res judicata between the parties and is unassailable collaterally, and must be accorded full faith and credit in Texas.

The determination that the California annulment must be given full faith and credit in Texas, however, does not decide this controversy. The question remains: Does Texas give the marriage ceremony of an annulled marriage sufficient vitality to release defendant from his obligation to pay alimony due?

Full faith to the California annulment means that such is conclusive everywhere as to the marriage status of plaintiff and Mosier. *The force of that rule, however, does not require that the effect of the California annulment on rights incident to its declaration of the invalidity of the California marriage shall be the same in all states.* Annulment is, in respect to its effect, analogous to divorce. Texas must recognize that the plaintiff's marriage with Mosier is nonexistent, but is free to decide for itself the effect of the California judgment of annulment on the obligations of defendant, a stranger to that decree.

It is frequently said, as a legal fiction, that annulment makes the annulled marriage ceremony as though it had never been. That fiction is variously treated in different jurisdictions. For example, in New York plaintiff would recover alimony after annulment of the second marriage but not for the period between the remarriage ceremony and the annulment. Sleicher v. Sleicher, 251 N.Y. 366, 167 N.E. 501. In Illinois the rule appears to be that the obligation of the former husband "to pay alimony until the wife remarry" is

terminated by the second marriage and remains terminated even though such second marriage be annulled. Lehmann v. Lehmann, 225 Ill.App. 513. The Illinois court, supra, takes the position that the words *"until her remarriage"* refer to the ceremony or act of remarriage as distinguished from the legal status or relation thereafter resulting. The Illinois court reasons that by a remarriage ceremony plaintiff elects to forfeit and does forfeit her right to receive alimony from a first husband under an *"until her remarriage"* decree.

Defendant contends that the record herein shows an issuable fact as to the remarriage of the plaintiff insofar as it operates upon his obligation to continue to pay alimony. The Trial Court cut the defendant off without permitting him to be heard and develop such facts and circumstances that he might, by taking the view that the annulment decree conclusively established as a matter of law that the plaintiff had never *remarried.*

In the case at bar the defendant has on file his affidavit to the effect that plaintiff has remarried, together with a certified copy of her marriage license, and the minister's certificate attesting that he performed and recorded the marriage. The plaintiff counters the foregoing with her affidavit saying: *"On August 10, 1952, in Los Angeles, California, a marriage ceremony was performed between me and Harrison Mosier. Other than this marriage ceremony, I have never remarried or attempted to remarry; * * *"*. and with certified copy of the California court's judgment of annulment of her marriage to Mosier wherein the court recites that the marriage was *"void from the beginning and is annulled."*

This brings us to an examination of our Summary Judgment Act and our Supreme Court's construction of its application.

Rule 166–A, Texas Rules of Civil Procedure, provides for summary judgment. "* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that * * *

*there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."*

Our Supreme Court, in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931, in discussing this rule, says:

"The duty of the court hearing the motion for summary judgment is to determine if there are *any* issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. * * * 'The underlying purpose of the Rule 166–A was elimination of patently unmeritorious claims *or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact.' The burden of proving that* there is no genuine issue of any material fact is upon the movant, and *'all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment.' * * ** '[The court] accepts as true *all* evidence of the party opposing the motion which *tends to support such party's contention, and gives him the benefit of every reasonable inference which properly can be drawn in favor of his position.'* "

Applying the foregoing rules to the facts in this case, we cannot say that there is *no doubt* as to the existence of a genuine issue as to whether plaintiff did or did not remarry. It is therefore our conclusion that there is here presented an issuable fact as to plaintiff's remarriage.

But there is still another consideration in this case. Under the U. S. Supreme Court holding in Sutton v. Leib, supra, we are bound to give full faith and credit to the annulment decree between plaintiff and Mosier, but giving full faith and credit to such decree *only* establishes conclusively as a matter of law that plaintiff and Mosier are not married to each other. The separable legal rights of defendant, a stranger to the annulment decree, are not determinable by the annulment decree. Texas must decide for itself the effect of the annulment decree on the obligations of defendant to pay alimony under the *"until remarriage"* judgment.

In arriving at a determination of the effect Texas should accord the annulment decree on the obligations of the defendant herein to continue payments of alimony under the *"until remarriage"* judgment, we must bear in mind: 1) That Texas does not allow alimony after final judgment of divorce, and that such is against our public policy. 2) Plaintiff by her own affidavit and admission *"attempted to remarry"*, thus voluntarily electing to exchange her right to receive alimony from her first husband under an *"until remarriage decree"*, for the bed and board of the second husband. 3) The courts of some of our sister states would not award plaintiff a judgment under the facts in the case at bar. 4) A complete development of the factual situation as relating to the rights and obligations of the parties has not been had in the case at bar, such being denied by the Trial Court's entry of summary judgment for plaintiff.

It follows that: 1) Accepting as true all evidence of the party opposing the summary judgment and giving such party the benefit of every reasonable inference which can be drawn therefrom, we cannot say that there is *no* doubt as to the existence of a genuine issue of fact as to whether plaintiff did or did not remarry. 2) A proper determination of the effect of the California annulment decree on defendant's obligation to pay alimony under the California *"until remarriage"* judgment, under Texas laws and public policy, by either a Trial Court or an Appellate Court, requires a fully and completely developed factual situation.

The judgment of the Trial Court is therefore reversed and remanded.