FIRST TENNESSEE BANK N.A. MEM-
PHIS, Executor of the Estate of Lula
S. Torian, Plaintiff-Appellant,

v.

Louise Crum SMITH, Ralph Crum, James
Crum, F. Bates Sullivan, C.H. Sullivan,
Jr., Louise Sullivan Jennings, Virginia
Sullivan McDaniels, Mary Charlotte
Gibson and Estate of H.D. Torian, Dor-
othy Hope Sullivan, Robert Lamb Sulli-
van, David Sullivan and Warren Sulli-
van, Hon. Henry Wilson and Hon. Leon
Hannaford, Defendants-Appellees.

No. 83–5501.

United States Court of Appeals,
Sixth Circuit.

Argued March 25, 1985.

Decided July 1, 1985.

Ben C. Adams (Lead), Robert Mark Glo-
ver, Heiskell, Donelson, Bearman, Adams,
Williams & Kirsch, P.C., John C. Speer
(argued), Memphis, Tenn., for plaintiff-ap-
pellant.

John S. Porter (Lead) (argued), Memphis,
Tenn., Elton Rieves, III, West Memphis,
Ark., Jane M. Wilbourn (Lead) (argued),
Jack F. Dunbar, Clarksdale, Miss., for de-
fendants-appellees.

Before KEITH and MARTIN, Circuit
Judges, and TAYLOR, District Judge.*

* Honorable Anna Diggs Taylor, United States Dis-
trict Judge for the Eastern District of Michigan, sitting by designation.

ANNA DIGGS TAYLOR, District Judge.

■ The question presented in this interpleader action is which of two consecutive and conflicting state court decisions is entitled to full faith and credit and preclusive effect in subsequent federal litigation. We affirm the decision of the Honorable Robert M. McRae, Jr., that the last judgment in time must control.

The Mississippi Code, § 91-7-91, and case law thereunder, provide that absent provisions to the contrary in a will, the federal estate taxes, debts and expenses of an estate must be paid out of the personalty of the estate, starting with the residuum. Resort to real property for such charges may be had only after exhaustion of all personalty. Conversely, Arkansas Statutes §§ 63-150 provide that the tax liability of an estate must be apportioned equally among all beneficiaries of the estate, whether of real or personal property, *pro rata*.

Lula S. Torian died testate at her undisputed residence and domicile in Arkansas at the age of 81 on October 24, 1972. She was a woman of substantial property, including the large house, and over 900 acres in Mississippi which had been her home until she married, apparently at age 79, and moved to her husband's Arkansas home. Her personalty included certain securities which were specifically devised, and a residue of approximately $486,000.00 in cash and securities situated in the appellant Memphis, Tennessee Bank's accounts and safe deposit. Her will nominated the appellant Bank (then the First National Bank) as executor of her estate. She had no debts.

Mrs. Torian's will made no provision as to how inheritance taxes should be paid by her estate. After certain specific bequests to her husband and others, not relevant here, it devised all of her land in Mississippi to be shared equally among the Sullivans (Dorothy Hope Sullivan, Robert Lamb Sullivan, David Sullivan and Warren Sullivan) who constitute the Mississippi appellees herein. The testatrix further provided that the residue of her estate, consisting of the personalty at the appellant Memphis Bank, was bequeathed to the Smith beneficiaries (Louise Smith, Ralph Crum, F. Bates Sullivan, Louise Sullivan Jennings, and Mary Charlotte Gibson) of Arkansas, also appellees herein.

Before appellant Bank had taken any steps toward probate of the Torian will it was advised by counsel that Arkansas, not Mississippi, would be the proper forum in which to proceed. Attorney Spears advised that probate in Mississippi would result in exhausting the residuary estate while the devisees of the Mississippi land would have no tax obligation "with a million dollars worth of land."

The Bank proceeded forthwith, nevertheless, to probate of the original will in DeSoto County, Mississippi, stating in its petition that although the testatrix had been a citizen and resident of Arkansas, probate was necessary and desirable in Mississippi, where she owned approximately 900 acres constituting 59% of her estate. The will was admitted to probate November 3, 1972, and appellant Bank was appointed executor without bond.

In January of 1973, the executor Bank petitioned the Probate Court of Crittendon County, Arkansas, for leave to file therein an authenticated copy of the will, together with the Order of the Mississippi Probate Court admitting the original will to probate in that state. The Bank was appointed executor of the Arkansas estate (which was the personalty at appellant's Bank in Tennessee, having its legal situs at the Arkansas domicile of the decedent). The Bank petitioned that the Mississippi assets be administered according to the laws of Mississippi, and that the personal property in Arkansas be administered according to the laws of Arkansas. It is, ironically, the fulfillment of that prayer which occasions its appeal here.

On May 9, 1973, the Bank petitioned the Arkansas court for postponement of its obligation to file an inventory, as a question had arisen as to the proper forum of original jurisdiction to probate the will. Then, on July 26, 1973, the Bank asked

leave of the Mississippi Probate Court to withdraw the original will and transfer it to Arkansas, for the stated reason that the will and codicils recited that decedent was a resident of Arkansas, and therefore the Arkansas court should determine the estate tax liabilities of the beneficiaries of the estate. The Arkansas Smith beneficiaries joined the Bank in that plea. The Mississippi Sullivans, however, opposed the Bank's request and cross-filed against the Bank for an order that it proceed with payment of all estate taxes (federal and state) in accordance with the requirement of Mississippi law that such taxes be paid from the residuary personalty in the estate.

The Mississippi Chancellor in Probate denied the petition to withdraw and ordered payment of all estate taxes, expenses, and liabilities from the residuary estate. The Supreme Court of Mississippi, in *Estate of Torian v. First National Bank of Memphis*, 321 So.2d 287 (1975), affirmed the Chancellor's decree, rejecting the comity arguments of the Bank, and holding that an interest analysis required the conclusion that the forum state, situs of the realty and its devisees, had an interest in the estate dominant over that of Arkansas, in which none of the corpus of the estate was actually located. It was again ordered that the residuary legatees bear all estate taxes and expenses. After this decision, the Bank did indeed pay all estate taxes and expenses from the residuary assets.

In April of 1976, the Arkansas residuary legatees petitioned the Arkansas Probate Court (where proceedings had been in abeyance, at the request of the Bank, since May of 1973) to direct the Bank as Arkansas executor to file its inventory and final accounting. The Bank did so. It reported that the Arkansas residuary estate had, at Mrs. Torian's death, consisted of $496,-000.00 in cash, bonds, and securities; and it claimed credits against those assets for certain sums which had been paid from the residuary pursuant to the decision of the Mississippi Supreme Court and, incidentally, without a request for the approval of the Arkansas Probate Court, as required by Arkansas statute. The Arkansas bene-

ficiaries objected to approximately $229,-000.00 of the charges claimed for payment of Mississippi, Arkansas, and federal estate taxes which, according to Arkansas law, should have been charged against the Mississippi real property. The executor Bank responded that the Arkansas beneficiaries, who had been parties with the Bank in the Mississippi proceedings (although not served with the cross-claim of the Mississippi beneficiaries), were bound to accord full faith and credit to the decision of the Mississippi Supreme Court, and that the question of allocation of tax liability was *res judicata* among all concerned.

The Arkansas Probate Court rejected the Bank's arguments, holding that the Bank itself, in its capacity as executor of the Arkansas estate, had not been party to the Mississippi proceedings, nor had the corpus of the Arkansas estate been subject to the jurisdiction of those courts. The Bank was ordered to distribute the Arkansas estate to the Arkansas beneficiaries in accordance with Arkansas law, and the credit of $229,-000.00 was denied.

In *Estate of Torian v. Smith*, 263 Ark. 304, 564 S.W.2d 521 (1978), the Arkansas Supreme Court affirmed the decision of the Arkansas Probate Court. Full faith and credit was afforded the judgment of the Mississippi court only as to the estate property over which it was held to have had jurisdiction: that is, the Mississippi real estate. The Bank then petitioned the United States Supreme Court for a writ of certiorari to the Supreme Court of Arkansas, which was denied October 2, 1978. *First National Bank of Memphis v. Smith*, 439 U.S. 883, 99 S.Ct. 223, 58 L.Ed.2d 195 (1978). The bank paid the judgment which consisted of $229,114.34 principal, as well as $27,795.02 interest.

On November 17, 1978, the Bank filed this interpleader action in the Western District of Tennessee, stating that it was faced with the conflicting judgments of the highest courts of the states of Arkansas and Mississippi, claiming jurisdiction under 28 U.S.C. § 1335 (1948), and joining the benefi-

ciaries and the probate judges of both states.

Judge McRae denied the Bank's *ex parte* motion for a temporary restraining order, and the motions of all beneficiaries for summary judgment or dismissal for lack of subject matter jurisdiction of an interpleader action under 28 U.S.C. § 1335. He found interpleader proper, as the Bank had posted bond of $260,000.00, and then enjoined the probate courts of the two states from proceeding to close the Torian estate. Interlocutory appeal was taken by all beneficiaries to this court and, on November 3, 1980, this court affirmed both of Judge McRae's interlocutory orders. *First National Bank of Memphis v. Smith*, 636 F.2d 1217 (6th Cir.1980). The Supreme Court denied a petition for writ of certiorari in 1982. *Smith v. First Tennessee Bank*, 458 U.S. 1105, 102 S.Ct. 3482, 73 L.Ed.2d 1366 (1982). The question of the propriety of interpleader jurisdiction is not before this court at this time, nor would a different conclusion on that issue lead to a different result, today.

Article IV, Section 1 of the United States Constitution provides that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state...."

Congress has further provided at 28 U.S.C. § 1738 (1948) that:

> Such acts, records and judicial proceedings or copies thereof, ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

■ It is well settled that valid state court judgments are entitled to full faith and credit in federal courts. *See Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725 (1941). In this case, however, the appellant Bank seeks a second and collateral federal review, on its claim of error by the Supreme Court of the State of Arkansas (from which the United States Supreme Court has already denied a writ of certiorari), and a ruling here that the Arkansas judgment is invalid for having erroneously denied full faith and credit to a prior Mississippi judgment.

The effect of a denial of certiorari by the Supreme Court of the United States, which has twice occurred in this controversy, should be noted here. In *State of Maryland v. Baltimore Radio Show*, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950), Mr. Justice Frankfurter wrote:

> The sole significance of such denial of a petition for writ of certiorari need not be elucidated to those versed in the Court's procedures. It simply means that fewer than four members of the court deemed it desirable to review a decision of the lower court as a matter "of sound judicial discretion." ... A variety of considerations underlie denials of the writ, and as to the same petition different reasons may lead different Justices to the same result. This is especially true of petitions for review on writ of certiorari to a State court. Narrow technical reasons may lead to denials. Review may be sought too late; the judgment of the lower court may not be final; it may not be the judgment of a State court of last resort; the decision may be supportable as a matter of state law, not subject to review by this court, even though the State court also passed on issues of federal law. A decision may satisfy all these technical requirements and yet may commend itself to review by fewer than four members of the court. Pertinent considerations of judicial policy here come into play. A case may raise an important question but the record may be cloudy. It may be desirable to have different aspects of an issue further illumined by the lower courts. Wise adjudication has its own time for ripening.
>
> \* \* \* \* \* \*
>
> [T]his Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review. The Court has

said this again and again; again and again the admonition has to be repeated. 338 U.S. at 917–19, 70 S.Ct. at 254–55, 94 L.Ed. at 565–66.

■ When conflicting judgments are entered in two states, each of which would otherwise be entitled to full faith and credit in the federal court, it is the second judgment which must control. *See Restatement 2d of Judgments* § 15 (1982). This "last-in-time" rule is based not only upon principles of comity and the need for finality, but upon the obligation of the litigants to exercise all due diligence in the full and forthright presentation of their controversy.

Appellant Bank argues here that this case is one of first impression, distinguishable from the entire line of authority endorsing the "last-in-time" rule by the fact that all parties were not before the second forum. That is, the Mississippi beneficiaries were not participants in the Arkansas litigation. That argument requires the response that neither were all parties present in the *first* forum, to which the Bank claims Arkansas erroneously failed to accord full faith and credit. The Arkansas courts explicitly found that the Mississippi courts lacked jurisdiction of the Bank in its capacity as executor of Arkansas personalty, or of the personalty itself, which had its legal situs at the domicile of the decedent. Both states agreed that the legal domicile of the decedent was Arkansas.

Moreover, it was peculiarly within the power and duty of the Bank itself as petitioner, plaintiff, and appellant in every stage of this litigation and held by the Arkansas courts to be charged with knowledge of applicable law in both states, to have expeditiously secured jurisdiction over all concerned in one forum for an early resolution of this problem at minimum expense to the estate. Mrs. Torian died without debts in 1972, and her estate remains open today.

Notice of the potential for a problem was given the Bank by counsel before any petition for probate was filed. Awareness of a problem was expressed by the Bank itself

on the occasion of its attempt to withdraw from Mississippi probate. Even an interpleader action such as this, at any point prior to the taking of this controversy to a second and conflicting judgment in Arkansas, may well have avoided the loss to the Bank itself which has resulted. The Bank has, as Judge McRae has found, precipitated its own dilemma.

The thread uniting this case with the entire line of nomadic controversies which were terminated, if not resolved, by attachment of full faith and credit to the last judgment in time, is the failure of the dissatisfied contestant to fully litigate its position in a forum which has provided that opportunity. This case is not distinguishable, as the appellant Bank claims. In this, as in the others, the dissatisfied litigant has created its own defeat: here, by failing to obtain jurisdiction over all concerned until after obtaining, on its own petitions, two valid and conflicting judgments.

In *Dimock v. Revere Copper*, 117 U.S. 559, 6 S.Ct. 855, 29 L.Ed. 994 (1886), the first of this line, debtor Dimock obtained a federal discharge in bankruptcy from his debt to Revere, while Revere simultaneously sued him on the debt in Massachusetts state court. Dimock did not raise the discharge in bankruptcy there, but after Revere had obtained a Massachusetts judgment against him and commenced to enforce it in New York he raised the discharge for the first time. The New York court gave full faith and credit to the Massachusetts judgment, disallowing the defense of discharge, and was affirmed therefore by the United States Supreme Court.

In *Davis v. Davis*, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1938), a wife residing in the District of Columbia under a decree of separation was sued by her husband in Arlington, Virginia, for divorce on grounds of desertion. She appeared in the Virginia court to contest the validity of his domicile in that state, suffered an adverse ruling on that point, chose not to answer the charge of desertion and did not appeal from the judgment of divorce. When she later filed in the District of Columbia for an increase

in separate maintenance, that court was held required to afford full faith and credit to the subsequent Virginia decree of divorce; the last judgment in time. She was not permitted to relitigate the question of the jurisdiction of the Virginia court.

In *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939), the mining company filed a federal bill of interpleader against two sets of claimants to the same shares of stock. They were citizens of the state of Idaho and citizens of the state of Washington, beneficiaries of an estate, each group relying upon the judgment of its respective state court. The Supreme Court afforded full faith and credit to the Idaho decision (the last-in-time) that the Washington courts had lacked jurisdiction, even though the question of jurisdiction had been litigated and quite differently decided in Washington. It held that:

If decided erroneously in the Idaho proceedings, the right to review that was in those (the Idaho) proceedings. While petitioner sought review from the Supreme Court of Idaho by petition for certiorari to this Court, which was denied, no review was sought from the final decree of the Idaho District Court ..., on new findings of fact and conclusions of law on remittitur from the Supreme Court of Idaho.

\* \* \* \* \* \*

Even where the decision against the validity of the original judgment is erroneous, it is a valid exercise of the judicial power by the second court.

One trial of an issue is enough.

308 U.S. at 77–78, 60 S.Ct. at 50–51, 84 L.Ed. at 92–93.

Appellant distinguishes the *Treinies* case because all parties were there noted to have been present before the second, Idaho, court. This court cannot agree with appellant's analysis. The presence of all parties was noted in that decision as a fact supportive of the conclusion that the disappointed litigants had foregone the opportunity to obtain a satisfactory result in Idaho by appeal from the final judgment of that court, which had been based upon new

findings. Here the appellant, plaintiff in all proceedings, has foregone the opportunity ever to assemble all parties in any forum until after obtaining the conflicting decisions of two states.

Moreover, appellant's argument concerning the absence of parties is only one facet of its basic claim that full faith and credit must not be afforded to an allegedly erroneous decision: the decision of the Arkansas courts. *Treinies* teaches that such is not the law. Even an erroneous decision is entitled to full faith. *Treinies* is also similar to the case at bar in that the United States Supreme Court had earlier denied certiorari on the allegedly erroneous second judgment in time. The court recognized in *Treinies* that Idaho well may have erred on that issue, but that error is without effect as to the validity of its judgment.

In *Sutton v. Leib*, 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448 (1952), Mrs. Sutton had divorced Mr. Lieb in Illinois and obtained an award of alimony payable monthly, until remarriage. She then married a New Yorker in Nevada on the same day on which he had obtained a Nevada divorce from his New York wife, who had neither been served nor appeared in his divorce proceedings. A New York court later invalidated the groom's divorce, and Mrs. Sutton then obtained a New York annulment of her Nevada marriage, and married a third man. She then filed a federal diversity action in Illinois against Mr. Lieb, for the alimony unpaid between her Nevada and New York marriages. His response was that his obligation under the Illinois decree had been discharged by the Nevada remarriage.

The Supreme Court ultimately held that full faith and credit must be given by Illinois to the New York annulment. However, as Illinois remains free to decide the legal impact of an annulment upon the remarriage terms of an Illinois decree, the matter was remanded for plaintiff to seek a decision on that question from the Illinois courts.

■ Not only does *Sutton* follow the "last-in-time" rule but, as in this case, a later forum is not precluded by the full faith and credit clause from adjudicating the legal effect of a foreign judgment upon those matters yet undecided which are within its jurisdiction.

The settled law, in short, requires that no collateral attack upon the valid judgment of the state of Arkansas be permitted here. We, therefore, AFFIRM the district court's judgment.